569 So.2d 110 (1990)
STATE of Louisiana
v.
Nona L. BRADY.
No. 90-K-1108.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
Writ Granted November 29, 1990.
*111 Harry F. Connick, Dist. Atty., Valerie A. Welz, Asst. Dist. Atty., New Orleans, for relator.
Ernest Lee Caulfield, Maurice A. Williams, New Orleans, for respondent.
Before CIACCIO, WILLIAMS and BECKER, JJ.
BECKER, Judge.
The defendant has been charged with second degree murder. Her motion to suppress evidence was heard on April 16, 1990, and was granted in part and denied in part. The State now seeks relief from that portion of the trial court's judgment granting the suppression of certain evidence.
Sometime around midnight on November 30/December 1, 1989, police officers responded to a call of a man who had been stabbed and was lying wounded in a residence at 1224 ½ S. White Street. The initial officers responding to the call encountered the defendant Nona Brady, who told them that the victim, Gregory Jacobs, had arrived home with stab wounds which he indicated he had received at the house of another girlfriend. Ms. Brady took the officers to Jacobs' body, which was found lying in the hallway in the center of the house. After ascertaining Jacobs was dead, the officers notified homicide detectives.
At approximately 12:30 a.m., Det. Demma, a homicide detective, arrived at the scene. He testified Ms. Brady told the officers that Jacobs had entered through the front door and had collapsed in the hallway. However, the officers noticed there was no blood in the front of the house, but there were bloodstains near the body and leading into the kitchen in the rear of the residence. The officers also observed a button lying on the kitchen floor.
The victim's body was positioned in such a way that his head was lying in the open doorway of the bathroom. Lying in plain view in a sink in the bathroom was a blood-spattered towel, soaking in water. Next to the sink was a linen closet, and there was blood on the handle of its door. The door, however, was closed. Det. Demma testified he opened the door and found inside a pair of bloodied scissors and a bloodstained shirt which was later found to have been worn by Ms. Brady when she went to her neighbor's house to notify the police. The officers then arrested Ms. Brady and advised her of her rights. They seized the button from the kitchen floor, the bloodstained towel from the bathroom sink, the scissors and the bloodstained shirt from the linen closet, and bloodstain samples from various places in the residence. The trial court suppressed the shirt button found on the floor of the kitchen, the bloody towel found in the bathroom sink, and the scissors and shirt found in the closed linen closet. It denied the motion to suppress blood samples taken from various places in the residence.
The State argues that the button and the towel were lawfully seized pursuant to the plain view exception to the warrant requirement. For evidence seized without a *112 warrant to be admissible under the "plain view" exception, "(1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband." State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). See also State v. Taylor, 531 So.2d 1137 (La.App. 4th Cir. 1988). Recently in Horton v. California, ___ U.S. ___, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within the plain view exception to the warrant requirement. Horton concerned guns used in an armed robbery which were discovered during a search of the defendant's house pursuant to a warrant which listed only the stolen property as the items to be seized. The Court held that the guns were lawfully seized pursuant to the plain view exception to the warrant requirement, even though the officers may have suspected they could have been found at the defendant's house. The Court reasoned that such seizure did not violate the defendant's privacy rights because the officers already had a justification for searching the defendant's house, and the discovery of the guns was made while the officers were conducting a warrant-backed search.
Here, although Ms. Brady did not personally call the police, she went to a neighbor's house and apparently asked the neighbor to call the authorities. Ms. Brady also admitted the police to the residence which she shared with the victim. She told the officers that the victim had been stabbed at another location, had come back to the residence, entering through the front door, and had collapsed where his body was found, in the hallway in the middle of the house. His head was lying in the open doorway of the bathroom, and lying in the bathroom sink was a bloodied towel. Based upon these facts, the officers discovered the towel in plain view while they were in an area in which they had a prior justification to be, and by its very nature, the towel covered in blood appeared to be evidence of a crime. Thus, the trial court erred by granting the defendant's motion to suppress this towel.
The defendant told the officers that the victim entered the house through the front door and collapsed in the central hallway. However, the officers found no blood in the front of the house, the pathway supposedly taken by the victim just before his death. Instead, a pool of blood was found at the site of his death, and a trail of blood led to the kitchen in the back of the house where the button was found.
Another recognized exception to the warrant requirement is a quick search of a premises to determine the presence of a perpetrator or persons in need of aid. See Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); State v. Perry, 502 So.2d 543 (La.1986), cert. den. Perry v. Louisiana, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987); State v. Lambertus, 482 So.2d 812 (La.App. 4th Cir.1986).
In Thompson, the defendant killed her husband, attempted to commit suicide, and then called her daughter (who did not live with her) in an attempt to get medical help. The daughter called the police. Approximately thirty-five minutes after the defendant had been taken to the hospital, a team of homicide detectives conducted a two-hour general warrantless search of the house, seizing evidence against the defendant. Although the Louisiana Supreme Court upheld this search, the United States Supreme Court reversed, noting there is no "murder scene" exception to the warrant requirement. The Court noted that the police have the right to make a warrantless entry and search of a building if they reasonably believe the building contains persons in need of assistance or that the perpetrator is still on the premises. However, the officers who had responded to the call had already searched for other victims and the perpetrator. In addition, the homicide officers admitted they had time to get a warrant, but chose not to do so. The *113 Court held that the warrantless general search was illegal.
In Mincey, the defendant killed a policeman in his apartment during a raid to arrest the defendant. After the scene had been secured, police officers conducted a three-day exhaustive search of his apartment and seized evidence against him. The Court recognized the right of the police to make a warrantless entry into a building to render immediate aid or apprehend a perpetrator, and noted that any evidence found in plain view could be seized. However, the Court found the search to be illegal, even though the officers had the right to enter the apartment to arrest the defendant. The Court noted:
It is one thing to say that one who is legally taken into police custody has a lessened right to privacy in his person. [citations omitted] It is quite another to argue that he also has a lessened right of privacy in his entire house. Id. 437 U.S. at 391, 98 S.Ct. at 2413.
In State v. Robert Moffitt, unpub. (88-KA-1727, La.App. 4th Cir., October 5, 1988), the defendant was found by his neighbor outside his house. The defendant's face was covered with blood, and he was handcuffed. He asked his neighbor to call an ambulance. The neighbor complied, and somehow police officers were also dispatched to his house. The defendant was treated by paramedics while still outside his house, and also while still outside he told the police a man had broken into his house, found him on the first floor of the dwelling, had beaten and handcuffed him, and then had fled through the downstairs back door. The defendant stated he was the only victim of the crime. One officer then entered the house looking for evidence to aid in the investigation. He noticed a trail of blood which led upstairs to behind a bar in a bedroom. There, on a shelf, he found plastic bags of marijuana. After returning to the defendant and ascertaining again that the attack occurred only on the first floor of the apartment, the officer returned to the upstairs bedroom and followed the trail of blood to a closet. Upon opening the closet door, he found a live marijuana plant hanging inside. The officer placed the defendant under arrest, prepared a search warrant for the house, and then executed the warrant, seizing the marijuana.
On writs from the trial court's refusal to grant the defendant's motion to suppress this evidence, this court reversed. The court found the officer had no justification for being in the house when he found the trail of blood because the defendant told him he was the only victim and that the perpetrator had fled the scene. Because the trail of blood which led to the marijuana was discovered by an illegal entry into the defendant's apartment, the subsequent issuance of the warrant based upon information gained by this illegal entry was also tainted.
Here, unlike Moffitt, the officers had a prior justification for being in the defendant's residence when they discovered the trail of blood leading into the kitchen. Also, unlike Moffitt, where the defendant told the officers he was the only victim and that the perpetrator had fled the house, here the victim was unable to tell the officers anything about his attacker. Unlike Thompson, the officers here had not yet searched for other victims or a perpetrator. The trail of blood leading to the kitchen was inconsistent with the story given by the defendant, and the officers apparently had suspicions about the veracity of her story. Being suspicious that perhaps another victim was in the kitchen or that the perpetrator was still there, the officers were justified in following the trail of blood to the kitchen, where the button was found in plain view. Therefore the trial court erred in suppressing the button.
The trial court also suppressed the scissors and bloodied shirt found inside the linen closet in the bathroom. As noted above, the victim's head was lying in the open doorway to the bathroom, where a bloodied towel was lying soaking in the bathroom sink. Next to this sink was a linen closet. The door to the closet was closed, and there was blood on the door handle. The officers opened the door and discovered the scissors and the shirt.
*114 Although the officers had a prior justification for being in the area of the bathroom, attending to the body of the victim, it cannot be said that the officers discovered these items in "plain view" because Det. Demma had to open the door to the closet in order to find them. In support of its contention that this evidence should not have been suppressed, the State cites State v. Robertson, 557 So.2d 315 (La.App. 4th Cir.1990), where this court noted in dicta that a warrantless search is permitted where there is inadequate time to obtain a warrant after probable cause arises and where there is an immediate danger that a perpetrator may escape or that evidence may be destroyed. Id. at 318. Robertson however, is distinguishable from this case, on its facts. In Robertson, the officers were responding to a call of activity in an abandoned house and found several persons inside the house smoking crack. The deciding factor of Robertson was the lack of privacy interest the defendant had in the abandoned house.
In its dicta, this court cited State v. Welch, 449 So.2d 468 (La.1984), where the victim of a rape led the officers to the perpetrator's apartment, from which she had escaped while he was asleep. Glancing inside the window, the officers saw articles of the victim's clothing. The officers entered the house without a warrant, arrested the defendant, and seized evidence. The Court upheld this warrantless entry, based mostly upon one officer's testimony that it would have taken the police twenty-four hours to get a warrant, and by that time the defendant could have destroyed evidence and fled.
In both Robertson and Welch, the officers had probable cause to believe the dwellings they entered contained evidence of a crime, and in both cases there was some testimony that getting a warrant was impractical. Here, there was no such testimony. Although the officers may have had suspicions about the defendant's statement that the victim was killed elsewhere, this would not have given them probable cause to believe the murder weapon would be found in the closed closet, even with a bloodstain on the door handle. In addition, there was no testimony that the officers could not have obtained a warrant or that they feared the defendant would flee or tamper with the evidence. Based upon these facts, and the fact that the officers had no justification for opening the linen closet door without a warrant, the trial court correctly suppressed the scissors and the shirt found inside that closet.
Accordingly, the writ is granted in part as to the bloody towel found in plain view in the kitchen sink and the button found on the kitchen floor and the judgment of the trial court is reversed as to those items. However, the writ is denied as to the scissors and the shirt found inside the closed linen closet.
WRIT GRANTED IN PART; DENIED IN PART.