585 So.2d 524 (1991)
STATE of Louisiana
v.
Nona L. BRADY.
No. 90-KK-2415.
Supreme Court of Louisiana.
September 9, 1991.
*525 Harry F. Connick, Dist. Atty., Valerie A. Welz, for plaintiff-applicant.
Ernest Lee Caulfield, Maurice A. Williams, for defendant-respondent.
LEMMON, Justice.
The issue before the court in this second degree murder case is whether the murder weapon and the bloody shirt apparently worn by defendant at the time of the stabbing should have been suppressed by the lower courts. We hold that the police officer who seized the evidence had probable cause to open the closet where the evidence was found and that his immediate and limited warrantless search of the closet was reasonable under the circumstances and within the scope of the defendant's tacit consent to investigate and develop clues to the murder.
Facts
Defendant and the victim, defendant's boyfriend, were living together in an apartment. At approximately 1:00 a.m. on the date of the homicide, defendant's neighbor, at defendant's request, called the police to report a stabbing and to request that officers be sent immediately to defendant's apartment. When the officers arrived in response to this call, defendant answered the door and allowed them to enter the apartment.
The officers found the victim in the hall next to the bathroom. After determining that the victim was dead, the officers called homicide detectives to the scene. Defendant told the officers that the victim said he had been stabbed in another residence and had staggered into their apartment through the front door before collapsing in the hall.
When Detective Demma arrived at the scene, he noted that there were several spots of blood on the kitchen floor near the rear door. There was also a button on the kitchen floor. As Detective Demma stood by the victim's head near the bathroom door, he noted a bloody towel in the lavatory in the bathroom and blood on the handle of the closet door adjacent to the lavatory. He then opened the closet door and found a pair of bloody scissors and a bloody shirt.[1]
Evidently recognizing that the presence of the apparent murder weapon in the closet contradicted defendant's statement that the stabbing occurred in another residence, Detective Demma arrested defendant for murder. Upon questioning after advice of her rights, defendant admitted that she had stabbed the victim.
Defendant subsequently moved to suppress the evidence and the confession. The trial judge suppressed all of the challenged evidence (except the evidence of blood stains on the floor), reasoning that "[t]here is just no crime scene exception to seize *526 this type of evidence."[2] The judge concluded that the police did not have the authority under the circumstances to search the linen closet without a warrant or without a more positive showing of consent to search the closet.
On the prosecutor's application for supervisory writs, the court of appeal reversed the suppression of the button and the bloody towel that had been found in plain view in the kitchen and bathroom where the officers were lawfully present. However, the intermediate court affirmed the trial court's suppression of the scissors and the bloody shirt on the basis that the officers did not have probable cause to believe evidence of the stabbing would be found in the closet and that the officers had no justification to open the closet without a warrant. 569 So.2d 110.
We granted the prosecutor's application for certiorari to review the suppression of the scissors and the bloody shirt. 571 So.2d 620.
The two principal issues are: (1) whether Detective Demma had probable cause to believe that evidence of the homicide would be found in the bathroom closet, and (2) whether Detective Demma's immediate and limited warrantless search of the closet was reasonable and within the scope of defendant's tacit consent to investigate the immediate area near the body.
Probable Cause
Probable cause to search exists when a reasonable police officer has cause to believe, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); State v. Kyles, 513 So.2d 265 (La.1987).
The probable cause standard is a practical, non-technical concept. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Dealing with probable cause involves dealing with probabilities which are not technical, but are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175, 69 S.Ct. at 1310. "[Practical people formulate certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same and so are law enforcement officers." United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Evidence collected by law enforcement officers must be viewed and weighed, not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. Id. Probable cause is a fluid concept, turning on the assessment of probabilities in particular factual contexts and not readily reduced to a neat set of legal rules. Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983).
In the present case it was evident that a homicide had been committed with a knife or similar weapon a short time before Detective Demma arrived at the scene. When Detective Demma saw the bloody towel in plain view in the bathroom lavatory near the body and further saw blood on the handle of the closet door next to the lavatory, a reasonable person versed in the field of law enforcement could have formulated a reasonable conclusion that there was a fair probability evidence relating to the stabbing would be found inside the closet. Clearly, the existence of probable cause was established by the evidence.
Reasonableness of Search
The more difficult question is whether the search of the closed closet and the seizure of the scissors and bloody shirt (which were not in plain view before the door was opened) were reasonable under the circumstances during the death scene investigation.
Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Const. amend. IV; *527 La. Const. art. I, § 5; La.Code Crim.Proc. art. 162; United States v. Ventreseca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The warrant requirement protects persons against unjustified governmental interference with their lives by limiting searches to those based on probable cause and by requiring a neutral determination of probable cause except when exigent circumstances warrant immediate action.
Prior to Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), many state courts and lower federal courts frequently permitted warrantless searches when there were compelling reasons for the immediate investigation of the scene of a possible murder. When the initial entry of the police was legal and there were exigent circumstances such as the fleeing of the unknown assailant, the need for immediately developing possible identification evidence was deemed to justify warrantless action. Other cases involving a warrantless continuation of an investigation also turned on the initial lawful entry onto the scene. See 2 W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 6.5(e) (2nd ed. 1987); Note, Warrantless Murder Scene Searches in the Aftermath of Mincey v. Arizona, 58 Wash.U.L.Q. 367 (1980).
Although not a murder case, the decision in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) was illustrative of the reasoning. In Tyler firefighters while battling a blaze discovered possible evidence of arson. After the fire was extinguished, but before firefighters left the scene at 4:00 a.m., an arson investigator found two plastic containers of inflammable liquid. At 8:00 and 9:00 a.m. a fire official responsible for determining the origin of fires entered the premises without a warrant and made two searches, the second while accompanied by a police arson investigator. Evidence of arson was seized. The Court approved the seizure of the evidence, noting that the two later searches were no more than a continuation of the initial legitimate entry. The Court held that fire officials, once legitimately in a building to fight a fire, may remain for a reasonable time after extinguishment of the fire to investigate its cause.
Three weeks later the Court decided Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In that case the police went to Mincey's apartment where a drug sale was scheduled to take place. One of the officers was fatally injured during an exchange of gunfire in a room in which Mincey was the only other occupant. The other officers made a quick search for other shooting victims or accomplices and then guarded the other suspects and the premises, but did not find or seize any evidence. Ten minutes later homicide detectives arrived and conducted a general warrantless search of the apartment that lasted four days. They examined every item in the apartment, including furniture and carpets, and they seized 200 to 300 objects. The state court held it was permissible to conduct a warrantless search of the scene of the homicide, limited to determining the circumstances of death, when the police were legally on the premises in the first instance. The Supreme Court reversed, noting that there were no exigent circumstances, no indication that evidence would be removed or destroyed, and no suggestion that the police could not conveniently obtain a warrant. The Court held that "the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there." Id. at 395, 98 S.Ct. at 2415. Thus the Court refused to recognize a general murder scene exception to the warrant requirement, but noted that the state court could determine on remand whether any evidence was permissibly seized under established Fourth Amendment standards. In concurring, Justice Rehnquist agreed with the invalidation of the four-day warrantless search and with the rejection of a general murder scene exception, but emphasized for purposes of remand that an immediate search may have been required as to some evidence which would have been lost, destroyed or removed if a warrant had been obtained.[3]
*528 Comparing Mincey to other cases in which there were compelling reasons for immediate investigation of the scene,[4] Professor LaFave observed:
What is immediately apparent is that Mincey lacks all of the characteristics which lower courts have traditionally relied upon in recognizing the so-called death scene exception. This was not a generalized investigation to ascertain a then unknown cause of death, for the police were already aware that the shooting was criminal and knew exactly who had done it. This was not a case in which an occupant of the premises had summoned the police and tacitly approved of the investigation, nor was it a case in which the deceased resided at the place of the investigation. Moreover, the temporal and spatial dimensions of the investigation substantially exceeded the limits imposed by other cases. It is difficult to imagine a worse set of facts upon which to rest an argument for a death scene exception to the warrant requirement, and thus it is not at all surprising that not a single vote could be mustered on the Court in favor of the police action in Mincey. (emphasis added).
In Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), the Court followed the Mincey reasoning in another death scene search. There, the defendant shot her husband and took an overdose of drugs in an attempted suicide. Changing her mind about wanting to die, the defendant called her daughter for help, and the daughter summoned the police to the defendant's house. The police found the defendant unconscious and removed her to the hospital. The police were told by the daughter that the defendant had shot her husband and then attempted suicide. Thirty-five minutes later homicide detectives arrived at the scene and conducted, without a warrant, a two-hour general exploratory search of every room in the house. The evidence at issue included a pistol found inside a chest of drawers in the room where the victim's body was found, a torn-up note found in a wastepaper basket in an adjoining bedroom, and a suicide note found in an envelope on a dresser. The Court held the search invalid on the basis of Mincey, noting that the two-hour general search, although substantially shorter than the one in Mincey, constituted a significant intrusion into the defendant's privacy. The Court further reasoned that the defendant's calling the daughter for assistance, which resulted in the daughter's call to the police, did not serve to diminish the defendant's expectation of privacy in her residence. The Court declined to express an opinion on the prosecutor's alternative argument of consent, because the state court had not addressed that issue in approving the search.
The present case is vastly different from Mincey and Thompson. In Mincey and Thompson the circumstances of the killing and the identity of the perpetrator were known before the search was conducted; in the present case the police knew a stabbing with some instrument had occurred somewhere, but knew nothing of the identity of the assailant. In Mincey and Thompson no occupant of the premises called the police, requested or participated in the investigation, or acted in any manner that demonstrated the occupant's diminished expectation of privacy in the premises; in the present case a co-occupant (defendant) had her neighbor summon the police, admitted the police into the apartment herself, disclaimed any culpability, and tacitly manifested an interest in the officers' conducting *529 an investigation, thereby significantly indicating that her expectation of privacy was yielding to her interest in apprehending the killer of her boyfriend.[5] In Mincey there was a four-day exploratory search of the entire premises that included opening drawers and ripping up carpets, and in Thompson there was a two-hour exploratory search of every room in the house, without any clue initially directing the police in either case to a particular place which might contain significant evidence; in the present case there was an immediate and momentary search of a closet with blood on the door handle that called out to be opened if the co-occupant and the police truly wanted to apprehend the killer. The immediate and limited particular search in this case especially contrasts with the delayed and extended general search in the Mincey and Thompson cases.
Additional analysis further shows the reasonableness of the officer's beliefs in the present case, when considered in the light of defendant's conduct. The police were summoned to the murder scene by the live-in girlfriend of the stabbing victim. When defendant welcomed the police into the apartment (of which she was the co-occupant) and stood by approvingly as they found the blood stains and the button on the floor, the police reasonably believed that defendant wanted them to develop clues, both inside and outside the apartment, as to the identity of the killer. And when Detective Demma, while examining the body in accordance with defendant's apparent desire to take the necessary steps to apprehend the culprit who might be escaping detection with each passing minute, noticed the bloody towel in the lavatory and the blood on the door handle of the closet, a reasonable police officer under such circumstances would have believed that the limited action of opening the closet door with the bloody handle to check there for clues that might aid in the speedy determination of the identity of the killer was within the scope of the investigation to which defendant had continued to consent tacitly.
At that point in time the probable cause to search the closet was not focused specifically on defendant, whose apparent purpose in summoning the police was to determine the identity of the killer of her boyfriend. At that point the immediate opening of the particular place on which probable cause focused was within the scope of the tacit consent of the person who had yielded her expectation of privacy to the objective of finding the killer. This case, therefore, is clearly not one in which the accused merely acquiesced to the authority of the police. Cf. Bumper v. North Carolina, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). A reasonable police officer would have believed under the circumstances of this case that he was not discharging his duty to the citizen who called him to the murder scene if he did not open the door and look inside.[6] Cf. Illinois v. Rodriguez, ___ U.S. ___, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (a warrantless search is valid if the facts available at the moment would warrant a police officer of reasonable caution in the belief that the party who consented to the search had authority over the premises); Florida v. Jimeno, ___ U.S. ___, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (a warrantless search of a closed container found within a car was valid when the defendant consented to the search of the car, knowing the officer was *530 looking for drugs, and did not place any limitation on the search, and when the officer knew drugs were generally carried in some form of container and reasonably believed that the scope of the consent permitted him to open the container). While the result might be different if the police had searched defendant's clothes in the bedroom and found cocaine, the limited search conducted here was clearly reasonable under the circumstances and within the tacit consent of defendant.
Decree
Accordingly, the judgment of the court of appeal is reversed, the motion to suppress evidence is denied, and the case is remanded for further proceedings.
CALOGERO, C.J., and DENNIS, J., dissent with reasons.
CALOGERO, Chief Justice, dissenting.
The rulings of the district court and the court of appeal suppressing the scissors and blood stained shirt were correct. For this reason, I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent.
The defendant, Nona Brady, is charged with the second degree murder of her boyfriend, Gregory Jacobs. She successfully moved the trial court to suppress several items of evidence seized by police on the night of the homicide from the residence she shared with Jacobs. The court of appeal affirmed the trial court suppression judgment as to two items of evidence but reversed as to others. State v. Brady, 569 So.2d 110 (La.App. 4th Cir.1990). We granted the state's application for a supervisory writ to review the suppression of the remaining evidence. State v. Brady, 571 So.2d 620 (La.1990).

FACTS
Around midnight Nov. 30, 1989, the New Orleans Police Department responded to a call that a man had been stabbed and was lying wounded inside a residence on White Street. Officers arriving at the scene encountered Nona Brady, who told them that the victim, Gregory Jacobs, had been stabbed at the home of another girlfriend. Ms. Brady took the officers to Jacob's body which was lying in a hallway in the center of the apartment. She told the officers that Jacobs had collapsed there after entering the apartment through the front door. After confirming that Jacobs was dead, the officers summoned detectives from the department's homicide division.
Homicide detective Marco Demma arrived on the scene at approximately 12:30 a.m. His investigation of the premises revealed that there were no bloodstains near the front door through which Ms. Brady claimed Jacobs had entered the apartment. Detective Demma noticed, however, that there were bloodstains in the kitchen at the rear of the apartment and around the apartment's rear door. He also noticed a button lying on the kitchen floor. These bloodstains in the kitchen area led Demma into the hallway where Jacob's body was located.
The body was positioned in such a way that Jacob's head was lying in the open doorway of the apartment's bathroom. Demma observed a blood-splattered towel in the bathroom sink. He also noticed that there were bloodstains on the door of a linen closet adjacent to the sink. Demma opened the closet and discovered a pair of scissors and a shirt, both stained with blood. In the course of his investigation, Demma seized the button found on the kitchen floor, the bloody towel found in the bathroom sink, the scissors and bloody shirt discovered in the linen closet and bloodstain samples taken from various places in the apartment. A neighbor later informed officers that Ms. Brady had been wearing this blood-stained shirt when she came to the neighbor's home for help. Based on the contradictions between Ms. Brady's story and the evidence indicating that Jacobs had been stabbed inside the apartment, Detective Demma placed Ms. Brady under arrest and took her to the stationhouse for interrogation. The grand jury subsequently returned an indictment charging Brady with second degree murder.
After entering a plea of not guilty, Brady filed a motion to suppress the items of evidence mentioned above. The trial court suppressed the shirt button found on the *531 kitchen floor, the scissors and blood-stained shirt discovered in the linen closet and the bloody towel taken from the bathroom sink. The trial court denied the motion to suppress the blood samples taken from various places in the apartment. Upon the State's application for review, the Court of Appeal found that the trial court had erred in suppressing the button and the bloody towel. The court of appeal reasoned that those items had been properly seized under the "plain view" exception to the warrant requirement. The court of appeal upheld the suppression of the scissors and the blood-stained shirt: "Although the officers had a prior justification for being in the area of the bathroom, attending to the body of the victim, it cannot be said that the officers discovered these items in `plain view' because Det. Demma had to open the door to the closet in order to find them." State v. Brady, 569 So.2d at 114.

DISCUSSION
It is undisputed that the officers did not obtain a warrant, and for the search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). In its writ application and its brief in this court the state contends that the searches in question did not violate Brady's constitutional rights because they come within the "exigent circumstances" and "plain view" exceptions to the warrant requirement.
Police officers can make a prompt warrantless search of the area of a murder scene to see if there are other victims or if a killer is still on the premises, Thompson v. Louisiana, supra; Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), but in the present case, the officers who first arrived on the scene had secured the area before Detective Demma's arrival, and there was nothing to indicate there was another victim or that an unknown killer might be lurking on or about the premises.
I find no error in the court of appeal's conclusion that Detective Demma's search of the unopened linen closet in the bathroom and seizure of the bloody shirt and scissors located therein do not fall within the plain view exception because the record reflects that these items were not clearly visible but were inside the unopened closet.
The state's "exigent circumstances" argument is in effect a claim of a justified warrantless search to prevent the destruction of evidence. Searches conducted without a warrant are per se unreasonable under the Fourth Amendment and Article I, § 5 of the Louisiana Constitution of 1974 subject only to a few specially established and well delineated exceptions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Raheem, 464 So.2d 293 (La.1985). These exceptions are jealously and carefully drawn and there must be a showing by those who seek exemption that the exigencies of the situation made the search imperative. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Welch, 449 So.2d 468 (La.1984). The burden is on the government to show that the search falls within one of the exceptional situations. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Tatum, 466 So.2d 29 (La.1985).
A justifiable warrantless search to prevent the destruction of evidence is a sub-category of the exigent circumstances exception. Vale v. Louisiana, supra; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Other approved sub-exceptions are (1) to discover the cause of a recent unexplained fire, Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); (2) to retrieve a possibly loaded gun vulnerable to discovery by vandals, Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); (3) to enter without warrant when officers reasonably believe someone is inside premises in need of immediate aid, Mincey v. Arizona, supra; See B. Salken, Balancing Exigency and Privacy in Warrantless Searches to Prevent Destruction of Evidence: The Need for a Rule, 39 Hastings L.J. 283, 287 (1988).
The Supreme Court has concluded that the need to prevent destruction of evidence is one type of exigent circumstance that *532 may justify warrantless action but has not clearly defined at what point the fear that evidence might be destroyed becomes sufficient to justify warrantless action. The Court has never approved a warrantless entry into private premises on this basis, although it has suggested that evidence "in the process of destruction", Vale v. Louisiana, supra, or "threatened with destruction", Johnson v. United States, supra, may justify such action. Salken, supra at 287. See also, Ringel, Searches & Seizures Arrests and Confessions, § 10.5(c) (2d ed. 1991).
Without the Supreme Court's guidance, the federal courts of appeals and state courts have developed varying approaches to the mixture of problems created by warrantless searches to prevent evidence removal or destruction. For example, the United States Court of Appeals for the Third Circuit announced the following rule: "When Government agents ... have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances and the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." United States v. Rubin, 474 F.2d 262 (3d Cir.), cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). Although the court noted that the "surrounding circumstances" will vary from case to case, it listed some of those it deemed relevant: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband were aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." Id. at 268-69.
An excellent study of the problem is set forth by Professor Salken in her article entitled Balancing Exigency and Privacy in Warrantless Searches to Prevent Destruction of Evidence: The Need for a Rule, 39 Hastings L.J. 283, 287 (1988), including a survey of the approaches used by the Federal Courts of Appeals and a proposed rule synthesizing the important elements in each that may help to resolve fairly the conflicts between the police officer's need to gather criminal evidence and the citizen's right to privacy. Under this formulation, the police may make a warrantless entry into private premises when: (1) they have probable cause to believe that evidence of criminal activity is located within; (2) they can articulate facts that create reasonable suspicion that evidence would be destroyed before a warrant could be obtained; (3) the circumstances giving rise to the threat of destruction must be neither avoidable by reasonably prudent officers nor created by them; and (4) the invasion of Fourth Amendment interests should be no greater than the circumstances require to maintain the status quo until a warrant can be obtained. Id. at 289.
I agree that the danger of removal or destruction of evidence may sometimes justify warrantless action under both the Fourth Amendment and Article I, § 5 of our state constitution. But such an exception to these safeguards against unreasonable searches, seizures and invasions of privacy must be "specially established and well delineated" and the burden must be on the state to show that the search and seizure falls within the exceptional situation. Coolidge, supra; State v. Talbert, 449 So.2d 446 (La. 1984). Although we recognize the need for further study and refinement of principles in this area, I believe that at present the most careful statements of the factors that should be considered in determining when the exception applies are contained in Professor Salken's article and United States v. Rubin, supra. See 2 Lafave, Search and Seizure § 6.5(b) at 658 (2d ed. 1987).
Accordingly, applying these precepts to the facts of the present case, I agree with the court of appeal that the state has failed to show that Detective Demma's actions in opening and searching the linen cabinet in *533 the bathroom and seizing the shirt and scissors therefrom comes within the exception to the warrant requirement for the prevention of the destruction of evidence. Unless the threatened evidence claim was raised for the first time on appeal, it was rejected by the trial judge although he did not comment specifically on it in his oral reasons. Accordingly, the trial judge's ruling is entitled to the great weight due to the tribunal who saw and heard the witnesses. If the state failed to assert the claim in the trial court this is an indication in itself that the claim is an afterthought and was not born of a genuine concern that evidence would be destroyed.
The trial court's judgment is clearly supported by the specific circumstances of this case. Before Detective Demma's search a reasonable officer in his position would not have had probable cause to believe that evidence of the crime was located in the bathroom clothes cabinet. He certainly would have had reason to suspect that evidence would be located there as well as in other places in the residence. But the mere presence of blood on the door of the cabinet near the victim's body and the bloody towel in the sink did not give rise to a probable cause to believe that criminal evidence was located there. Blood stains had also been discovered in the kitchen, the hallway and the rear doorway, all of which could have aroused a reasonable suspicion that evidence might be concealed nearby. On the other hand, assuming for the sake of argument, that the officer had probable cause to believe that evidence of criminal activity was located on the premises, he necessarily would have had probable cause to believe that a crime had been committed there and that Brady had committed the offense, since she was the only person known to be in the residence with the victim when he died. Consequently, under such an assumption, the officer would have had probable cause to arrest her, place her in custody and remove her from the premises, thereby eliminating any possibility that the evidence would be destroyed before a warrant could be obtained.
At oral argument in this court, the state contended that Brady had tacitly consented to Detective Demma's search of the clothes cabinet in the bathroom. This argument was not urged by the state in its brief in the court of appeal or in its writ application or brief in this court. Because the argument does not deal with a legal issue that this court agreed to consider in granting a supervisory writ and because it has not been briefed by the parties it should not have been considered in this review. Nevertheless, because the majority necessarily relies upon a finding of tacit consent by the defendant, I will address it briefly because the argument is clearly without merit here.
The Supreme Court in Thompson v. Louisiana, supra, indicated that its holding in Mincey v. Arizona would not invalidate a consensual search of a murder scene under certain circumstances, but that any such claim of valid consent would have to be measured against the standards of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) and Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thompson v. Louisiana, 469 U.S. at 23, 105 S.Ct. at 412. In Schneckloth, the Supreme Court held that the prosecution must prove that consent to a search was voluntary and not the product of duress or coercion, express or implied, and it is only by analyzing all the circumstances of an individual's consent that it can be ascertained whether it was voluntary or coerced. Schneckloth v. Bustamonte, 412 U.S. at 228, 233, 93 S.Ct. at 2048, 2050. However, while knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the necessary predicate for an effective consent. Id. at 227, 93 S.Ct. at 2047. Further, the Supreme Court held in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), that mere acquiescence to the authority of the police is not consent, and conduct that is questionable or that clearly indicates mere acquiescence to perceived police authority will not support a police search based upon the party's alleged consent, regardless of the lack of coercion.
*534 In the final analysis, whether a defendant, under circumstances similar to those posed here, consented to a search presents an issue of fact to be resolved by the trial judge based on his assessment of the relative credibility of the parties; his determination of the issue will generally not be reversed on appeal unless the finding was clearly erroneous. State v. Wilson, 363 So.2d 445 (La.1978); State v. Temple, 343 So.2d 1024 (La.1977); U.S. v. Sanchez, 635 F.2d 47 (2d Cir.1980); State v. Garcia, 216 Neb. 769, 345 N.W.2d 826 (1984); Jordan v. State, 384 So.2d 277 (Fla.App.1980); Ringel, Searches & Seizures Arrests and Confessions § 9.3(a) (2d ed. 1991).
In the present case, the trial court expressly found that the defendant had not consented to the search of the bathroom clothes cabinet by Detective Demma. The trial court saw and heard Detective Demma testify as the only witness at the suppression hearing. Detective Demma testified to hearsay and double hearsay to the effect that the defendant had gone to a neighbor's house for help and that she had told other officers that her boyfriend had received the stab wound somewhere else before coming home. But, it was not established whether the defendant intended to request that the police come to her house to investigate the killing. In fact, Detective Demma did not testify that the defendant consented to the search; nor did he suggest that the defendant had indicated her consent to search by word, deed, gesture, assistance or any other conduct. Under these circumstances, I cannot say that the trial court was clearly in error in determining that the state failed to prove that the defendant consented to the search.
For the reasons assigned, I respectfully dissent.
NOTES
[1] This shirt was later identified by defendant's neighbor as the one worn by defendant when she requested the call for assistance.
[2] The judge refused to suppress the confession, and defendant did not seek review of that ruling.
[3] The Court has suggested an emergency circumstances exception to the warrant requirement when necessary to prevent destruction or removal of evidence. See Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). However, the Court has never recognized in a case holding that a valid warrantless search may be permitted when necessary to prevent the imminent destruction, removal or concealment of evidence for which law enforcement authorities have probable cause to search.
[4] Professor LaFave referred primarily to cases in which the defendant and the victim were co-occupants of the premises and the defendant claimed that someone else had killed the victim, expressly or impliedly urging the police to take the necessary steps to apprehend the culprit.
[5] In State v. Fredette, 411 A.2d 65 (Me.1979), the defendant called the police to her home, stated her husband had been shot by an intruder, and did not object to the continuing investigation which subsequently implicated her. The court held that the defendant's conduct had suggested her consent to the entry for the dual purpose of getting medical assistance and determining the identity of the killer. The court concluded that the police reasonably understood, from these circumstances and from the defendant's failure to limit her consent to the police presence to time, space or purpose, that the search was within the scope of her tacit consent.
[6] Of course, the perspective changed as soon as Detective Demma opened the door. Demma's finding the bloody shirt and the apparent murder weapon inside the closet, when pieced together with defendant's prior statement that the victim had been stabbed before he entered the apartment, shifted the finger of suspicion upon defendant and provided probable cause to arrest defendant for the murder.