642 So.2d 1318 (1994)
STATE of Louisiana
v.
Darrell RANGE.
No. 93 KA 1693.
Court of Appeal of Louisiana, First Circuit.
August 5, 1994.
Rehearing Denied October 27, 1994.
*1319 Doug Moreau, Dist. Atty., Dana Ashford, Asst. Dist. Atty., Baton Rouge, for State of La., appellee.
A. Hays Town, III, Baton Rouge, for defendant, appellant.
Before LOTTINGER, C.J., and CRAIN, and LeBLANC, JJ.
LOTTINGER, Chief Judge.
Darrell Range, defendant, was charged by bill of information with possession of cocaine, La.R.S. 40:967(C). Initially, defendant pleaded not guilty and opted to be tried by a jury. During the trial, defendant withdrew his former plea and pleaded guilty as charged. However, defendant conditioned his guilty plea by reserving his right to seek review of the trial court's denial of a motion to suppress evidence. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to three years imprisonment at hard labor, with credit for time served. Defendant appeals, urging as his only assignment of error that the trial court erred by denying his motion to suppress evidence.[1] We affirm defendant's conviction and sentence.

FACTS
On the evening of December 11, 1992, Officers John Bosco and Randy Scrantz of the Baton Rouge Police Department, Narcotics Division, submitted an affidavit for a search warrant. The officers sought to search a residence located at 125 North 13th Street in Baton Rouge. The officers provided that a confidential informant ("CI") informed them that the residence contained quantities of packaged cocaine and facilitated the sale of cocaine. According to the CI, a black female named "Louise" conducted cocaine sales with numerous individuals who came to the residence. The CI reported that within the preceding twenty-four hours he had observed the cocaine and had witnessed the drug transactions. Based on this information, the district judge found probable cause to support the issuance of a search warrant.
On the same evening, the district judge issued the warrant authorizing the search of the residence located at 125 North 13th Street. In addition to cocaine, the warrant directed the officers to search for "monies, documents, weapons and paraphernalia associated with the use and distribution of cocaine." The warrant authorized the officers to search the residence, which included all structures, vehicles, and other places of concealment where the specified items could be found.
At 10:00 p.m., the officers executed the search warrant. Officer Bosco testified that they entered the residence and announced their presence and purpose. During the search, the officers found eight individuals inside the residence. In one of the bedrooms, the officers discovered seven "rocks" of crack cocaine inside a pillow case. This bedroom was confirmed to be the room of Louise Jackson, a resident of the house. The officers found Jackson in her room at the time of the search and arrested her.
*1320 In the bathroom, the officers found a key purse containing a small amount of cocaine and $124.00 in United States currency. Dematrena Addison, who the officers discovered standing next to the bathroom door, admitted to throwing the key purse on the bathroom floor when the officers entered the residence. Addison was arrested.
In a second bedroom, the officers located defendant. This bedroom was connected to Jackson's bedroom. The officers found defendant standing in the middle of the room with five other individuals. Officer Scrantz searched defendant. Inside defendant's right front pants pocket, Officer Scrantz found a small plastic bag. Upon inspection, the bag contained a substance suspected to be cocaine. Defendant proclaimed that the substance was just "cut," not cocaine. Defendant was arrested. A field test established that the substance was cocaine. Later, a test conducted by the Louisiana State Police Crime Lab confirmed that the substance found in defendant's pocket was cocaine.
As indicated above, defendant first pleaded not guilty to the state's charge and elected to be tried by a jury. Defendant moved to suppress the evidence seized from him during the search. The state stipulated that the search of defendant was not a weapons frisk. The trial court denied defendant's motion, orally ruling as follows:
In this matter there was a reliable confidential informant that gave an affidavit that was presented to a court of law wherein it was found probable cause to search certain premises. Defense counsel says that this does not include the right to search places of concealment that are on or about human beings not specifically listed, either generally or specifically, in the warrant. The result of a ruling in the manner suggested by defense counsel would lead to the absurd consequence that persons in a location wherein a search warrant was issued would only have to put the contraband in their pocket and make it free if their name had not been previously listed on the warrant. This would be absurd. The State of Louisiana does grant greater, broader, more liberal rights but the people themselves as a whole have a right and when these rights are protected by the warrant procedures that are initiated by requirements of law that there be probable cause to search. Technicalities were never intended to be used to defeat the objective of the law, that is to search the premises where crime is being conducted in a rampant and unacceptable manner. Accordingly, the motion to suppress is denied. I'm now going to call the matter for trial.
Accordingly, defendant's case proceeded to trial. Yet, during the trial, defendant decided to plead guilty and reserve his right to challenge on appeal the trial court's denial of the motion to suppress. This appeal followed.

ISSUE
The following question is presented for our review: In light of the totality of the circumstances, was the search of defendant's pants pockets reasonably within the scope of the search warrant because the officers had probable cause to suspect that defendant had drugs concealed on his person?

DISCUSSION
Defendant, whose guilt is plain, complains that the trial court erred by denying his motion to suppress. Defendant argues that because the officers' affidavit for the search warrant did not specifically portray him by name or physical description, the warrant did not establish probable cause to search him.
On the other hand, the state submits that the officers were authorized to search the individuals found inside the residence by the authority of the search warrant itself. The state argues that the items which the officers sought were small enough to fit inside an individual's pocket or clothing. Hence, the state insists that because an individual's pockets are a likely place to conceal illegal drugs, the warrant justified the search of defendant. Alternatively, the state submits that the officers seized the cocaine from defendant following a search conducted in good faith.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the *1321 Louisiana Constitution guarantee the rights of persons to be secure from unreasonable searches and seizures. Generally, a "reasonable search" is one conducted pursuant to a search warrant issued on probable cause. State v. MacDonald, 390 So.2d 1276, 1278 (La.1980) (Rehearing denied). Although the officers in this case obtained a search warrant issued on probable cause, we examine the facts and circumstances involved to determine if the scope of the warrant allowed the officers to search defendant.
We recognize that the disposition of this case falls within the purview of Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), reh'g denied, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 737 (1980). In Ybarra, the United States Supreme Court questioned the constitutionality of an Illinois statute which authorized the police to detain and search any person found on the premises being searched pursuant to a search warrant. 444 U.S. at 87, 100 S.Ct. at 340. The aim of the statute was to protect the police from attack and to prevent the disposal or concealment of the items described in the warrant.[2]Ybarra, 444 U.S. at 87 n. 1, 100 S.Ct. at 34 n. 1. Simply, the Supreme Court decided whether the application of the statute to the facts of the case violated the Fourth and Fourteenth Amendments.
In Ybarra, the police, armed with a search warrant, entered a tavern to search for evidence of possession of a controlled substance. Chiefly, the police were looking for heroin. The warrant directed the police to search the premises of the tavern and the person of "Greg," a tavern bartender. Upon entering the tavern, the police announced their purpose and informed those present of their intention to search for weapons. Subsequently, the police conducted a patdown of each of the nine to thirteen tavern patrons.
One patron, Ventura Ybarra, was standing in the front of the bar next to a pinball machine. Although the police lacked a reasonable belief that Ybarra was armed, or that he had committed, was committing, or was about to commit a crime, the police frisked him. During the first patdown, the police felt what was described as a cigarette pack with objects inside. The police did not remove the pack from Ybarra's pocket. Instead, the police proceeded to frisk the remaining tavern patrons. Afterwards, the police returned to Ybarra to conduct a second search. During the second search, the police removed the pack from Ybarra's pants pocket. Inside, the police discovered foil packets containing heroin. Ybarra was arrested and charged with possession of heroin. The trial court denied Ybarra's motion to suppress the heroin found on his person. Ybarra was found guilty as charged.
The United States Supreme Court reversed the conviction, holding that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." Ybarra, 444 U.S. at 91, 100 S.Ct. at 342. The Court reasoned that although the police had obtained a warrant to search the tavern in which Ybarra happened to be present at the time it was executed, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra, 444 U.S. at 91, 100 S.Ct. at 342 (emphasis added).
Regarding probable cause to search, in State v. Brady, 585 So.2d 524 (La.1991), our supreme court reiterated the standard enunciated by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, "[p]robable cause to search exists when a reasonable police officer has cause to believe, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." Brady, 585 So.2d at 526. Moreover, "[p]robable cause is a fluid concept, turning on the assessment of probabilities in particular factual contexts and not readily reduced to a neat set of legal rules." Brady, 585 So.2d at 526.
In State v. Beals, 410 So.2d 745, 747 (La. 1982), our supreme court addressed the issue of "whether the action of law enforcement *1322 officers in searching the outer clothing of the defendant was reasonably within the scope of the warrant authorizing the search for contraband of the residence premises in which the defendant resided." The supreme court employed Ybarra to answer the question.
In Beals, the police obtained a search warrant to search a residence. However, the application for the warrant disclosed that an informant had witnessed a single drug transaction between the occupant of the residence and another person. When the police executed the warrant, the defendant was present. The police searched the defendant, finding drugs in her front pants pocket. The defendant argued that a warrant issued to search the premises for narcotics did not authorize the search of her person simply because she happened to be on the premises at the time of the search. Beals, 410 So.2d at 746. Further, the defendant contended that the search exceeded the constitutionally permissible scope of a warrant for the search of a premises as established in Ybarra. Beals, 410 So.2d at 746-47. However, the supreme court answered as follows:
Our specific but narrow holding under the facts and circumstances of this case is that where a warrant to search a residence for contraband is issued on probable cause based on information that the occupant of the residence participated in the sale of drugs at the residence three days prior to the issuance of the warrant, the reasonable scope of the warrant extends to a search of the pockets of the outer clothing of the resident of the premises who is on the premises at the time it is searched.
Beals, 410 So.2d at 748-49 (emphasis added).
The supreme court, finding that the police had reason to believe that the defendant was in possession of contraband, recognized such a search was reasonable and necessary because crimes are committed by persons, not by places. Beals, 410 So.2d at 748, 749. The court stated that Ybarra "does not mandate a different conclusion." Beals, 410 So.2d at 748. However, as emphasized above, the court's holding is limited to the facts and circumstances of that particular case. Likewise, because each case presents a unique factual situation, our disposition of this case is also fact-dependent.
Although we also utilize Ybarra to determine if the officers had probable cause to search defendant, we recognize that several crucial factors distinguish Ybarra from the case at hand. First, the search in Ybarra occurred in a public place. Hence, there was no identifiable connection between the defendant and the premises. Second, in Ybarra, the search warrant complaint did not allege that the tavern was frequented by persons illegally purchasing drugs. In fact, the complaint did not even mention tavern patrons. Third, in Ybarra, there was no indication that the defendant had knowledge of the criminal activity which involved the tavern. Apparently, the defendant's presence was a coincidence. Thus, in light of these factors, the Supreme Court concluded that, "without more," the police lacked probable cause to link Ybarra with the criminal activity which transpired in the tavern simply because Ybarra happened to be in proximity to others independently suspected of criminal wrongdoing. However, in the case at hand, there is much more.
In this case, the search occurred in a private residence. In contrast to a public place, access to a private residence is presumably limited. Thus, an individual's admission to the residence raises "a stronger inference of connection to the activities conducted within." United States v. Holder, 990 F.2d 1327, 1329 (D.C.Cir.1993). Moreover, as wisely observed in United States v. Reid, 997 F.2d 1576, 1587-79 (D.C.Cir.1993):
Common sense suggests that there is a much greater likelihood that a person found in a small private residence containing drugs will be involved in the drug activity occurring there than an individual who happens to be in a public tavern where the bartender is suspected of possessing drugs. Police officers are not blind to these realities and we should not encourage them to be.
We notice that defendant's presence in the residence was not a coincidence. Instead of being someone who just happened to be at the residence with no knowledge of the illegal *1323 activities, defendant's presence suggested an active role in the cocaine operation. Hence, we find that there was strong nexus between defendant and the residence subject to the search warrant.
The residence, a "crack house," facilitated a criminal operation. The residence housed packaged quantities of cocaine and provided a cover for the sale of cocaine. Defendant's presence in the closed quarters suggests complicity in the criminal enterprise. Because an innocent person might become an adverse witness, we find it unlikely that the occupant of the residence trafficking illegal drugs would allow someone not involved in the operations to observe such. Thus, the officers had strong reason to suspect that defendant was not a casual nighttime visitor of the residence at 125 North 13th Street.
Moreover, the complaint for the search warrant alleged that a number of individuals came to the residence to purchase cocaine. According to the complaint, the CI witnessed various individuals engage in illegal drug transactions at the residence. Hence, the logical inference for the officers to draw upon encountering defendant huddled with five others in the middle of a room was that he was a party to the distribution of cocaine in the capacity of either a buyer or a seller.
Additionally, Officer Bosco testified at trial[3] that he worked in the narcotics division for eleven of his thirteen and one half years with the Baton Rouge Police Department. Officer Bosco relayed that in those eleven years he learned that narcotics can be hidden anywhere. Officer Bosco provided that he has found narcotics hidden in "places you wouldn't think." Accordingly, Officer Bosco testified that when searching residences for narcotics, he has found drugs concealed in the clothing of persons located inside.
This court does not exist in a vacuum and its judges are not insulated from the realities posed by the illegal drug market. As such, we are aware of the nature and characteristics of drug sales. Hence, we are aware that those engaged in the purchase or sale of drugs often will conceal drugs on their persons to escape criminal responsibility. Thus, we hold that under the totality of the circumstances, it was reasonable for the officers to conclude that defendant was buying or selling drugs, or had bought or sold drugs. Accordingly, the officers had probable cause to search defendant because the facts and circumstances of this case indicate that there was at least a fair probability that defendant had targeted evidence concealed on his person at the time of the search. A different holding in this case is likely to frustrate the purpose of search warrants issued on probable cause, allowing a person inside a residence subject to a search warrant to conceal targeted evidence within his clothing to prevent its seizure by the police.
Furthermore, although our supreme court in Beals enunciated a "specific and narrow holding," we believe that the search warrant in this case authorized a search beyond the residence and those who resided therein. First, in Beals, the informant observed a single drug transaction at the residence. Here, the CI witnessed numerous cocaine sales with various individuals who came to the residence for the sole purpose of buying cocaine. Second, in Beals, the drug sale occurred three days before the issuance of the search warrant. Here, the complaint for the search warrant disclosed that in the twenty-four hours preceding its submission, the CI observed numerous cocaine sales. Hence, in this case, the timing of the numerous drug transactions in relation to the execution of the search warrant, which occurred only a few hours after its issuance, makes it more probable that the individuals found inside the residence were those involved in cocaine sales. Third, since Beals, drug traffickers have evolved the use of "crack houses," residences identified by the police as places utilized primarily for the sale and use of illegal drugs, particularly crack cocaine. Thus, where the warrant fairly identifies the premises to be searched as a place being used primarily for the sale and use of illegal *1324 drugs, persons on those premises when the warrant is executed may be reasonably expected to possess illegal drugs and thus subject to the search.

CONCLUSION
In sum, we hold that the search of defendant was reasonably within the scope of the warrant authorizing the officers to search the residence at 125 North 13th Street because, in light of the totality of the circumstances surrounding the search, the officers had probable cause to suspect that defendant had cocaine concealed on his person. Hence, this is not a case in which the officers'"probable cause" depended on "mere propinquity to others independently suspected of criminal activity." For the reasons expressed herein, we find that the trial court's denial of the motion to suppress was correct. Accordingly, we affirm defendant's conviction and sentence. Defendant is taxed with all costs of this appeal.
AFFIRMED.
LeBLANC, J., dissents and assigns reasons.
LeBLANC, Judge, dissenting.
I respectfully dissent. Although the majority opinion relies in great part on State v. Beals, 410 So.2d 745 (La.1982), I find the Beals factors are not present in this case.
In finding the evidence admissible in Beals, the Court noted the defendant's testimony established that she was the sole resident of the premises and emphasized that it had taken that fact into consideration. Since the warrant was based on an affidavit of probable cause including the informant's claims that the occupant had been seen engaged in a drug transaction on the premises, drugs were observed on a table in the premises, and that drugs had been found during a prior search of the residence, the Court found there were "articulable particular facts" justifying the officers' detention and search of the resident of the premises and that the officers had reason to believe the defendant had a special connection with the residence and was in possession of contraband.
In this case, Officer Bosco's testimony established only that defendant was in a bedroom of the house during the search. In response to defense questioning, he admitted that the officers had no knowledge that defendant had committed or was committing any crime and the warrant contained no language authorizing a search of persons in the residence because of the ease of concealment of contraband. Officer Bosco did state that the warrant requested the issuing magistrate to give the officers permission to search the residence, including all "structures, vehicles and other places of concealment on the premises where the things specified in the search warrant might be found."
Although the court characterized as "absurd" defendant's claim that the search of his person was not authorized by the warrant authorizing a search of the residence, "the Fourth and Fourteenth Amendments protect the `legitimate expectations of privacy' of persons, not places." Ybarra v. Illinois, 444 U.S 85, 91-92, 100 S.Ct. 338, 342-43, 62 L.Ed.2d 238 (1979). Thus, there is a clear distinction between the search of objects in a residence searched by authority of a warrant and the search of persons in the same residence. If the state believed a search of the persons in the premises to be searched under a warrant was necessary, it should have set forth probable cause in the affidavit and obtained the necessary authorization.
I would find the state did not establish "sufficient articulable knowledge of particular facts" to justify a search. The state did not establish defendant's connection with the residence and could not, therefore, rely upon information that might have connected the owner or the occupant of the residence with contraband located therein.
Accordingly, I would find the search of defendant's person and the seizure of contraband from his pocket was neither authorized by the warrant nor supported by independent probable cause.
NOTES
[1] In addition to the trial court's denial of the motion to suppress, defendant lists "[a]ny errors patent in the record" as a second assignment of error. However, because this court routinely examines every criminal record for patent errors, defendant's request for such a review is unnecessary. See La.Code of Crim.P. art. 920(2).
[2] As the Court noted, in some circumstances, the statute authorized the police to conduct searches without probable cause. Ybarra, 444 U.S. at 96 n. 11, 100 S.Ct. at 344-45 n. 11.
[3] It is well established that in determining whether the trial court's ruling on a motion to suppress is correct, the reviewing court is not confined to just the evidence adduced at the hearing on the motion. Accordingly, the reviewing court may consider all pertinent evidence given at the trial of the case. Beals, 410 So.2d at 747.