665 So.2d 112 (1995)
STATE of Louisiana
v.
Joann WILLIAMS, Monique Breely and Stephanie Brown, a/k/a Stephanie Harris.
No. 95-K-1971.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
*113 Harry F. Connick, District Attorney, Kevin Marks, Assistant District Attorney, Gina H. Warner, Law Clerk, New Orleans, for State.
Before LOBRANO, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
The defendants have been charged in this case with possession of cocaine. The motion to suppress the evidence was heard on August 25, 1995, at the conclusion of which the court granted the motion as to defendant Brown. The State now comes before this court seeking relief from this ruling. The transcript of the August 25th hearing has been received, and it indicates that this writ was filed timely.

FACTS
On the afternoon of February 10, 1995, police officers executed a search warrant at 2315 Joliet Street. As the officers arrived at the residence, they discovered the defendant Stephanie Brown, who had just exited the house. They detained her, entered and secured the house, and then escorted her inside. Also inside the house were the defendants Joann Williams and Monique Breely and a child. The officers advised the women that they were under investigation for narcotics violations, advised them of their Miranda rights, and advised them that the officers had a warrant to search the house. The officers asked the women if they had any contraband or weapons to declare, and when the women did not answer, the officers began searching the house. At one point, Ms. Williams told the officers that she would tell them where the drugs were if they stopped searching. Ms. Williams told them that she personally was holding a small amount of cocaine in her pocket and that she had given the rest of it to Ms. Breely to keep for her. The officers searched Ms. Williams and retrieved both powdered and crack cocaine. The officers then asked Ms. Breely to pull her bra away from her chest, and when she did so, powdered and crack cocaine and marijuana fell from her bra. A search of Ms. Brown's purse revealed .7 grams of cocaine.

DISCUSSION
The only evidence suppressed by the trial court was the .7 grams of cocaine seized from Ms. Brown, who had exited the house just as the officers arrived to execute the search warrant. Neither party argues that the search warrant was deficient; indeed there appears to be ample probable cause for its issuance. Nor does this writ concern the evidence seized from Ms. Williams and Ms. Breely. The sole issue before this court is whether the small amount of cocaine found in Ms. Brown's purse was lawfully seized.
*114 The State argues that the issuance of the warrant empowered the officers to search Ms. Brown and her purse. In support, it cites Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), where the Court held that officers executing a search warrant could detain the resident of the place to be searched during the pendency of the search. In Summers, the officers encountered the defendant, who lived in the house to be searched, on the steps of the house just as they arrived to search the house. The officers detained the defendant, requested his assistance in entering the house, and then arrested him when they discovered drugs in the house. Pursuant to a search incident to this arrest, they found additional drugs in his pocket. Upholding the detention of the defendant, the Court noted that the defendant's privacy rights had already been intruded upon by the execution of the search warrant for his house, for which a magistrate had already found probable cause. The Court further noted that the additional violation of his privacy right in being detained during the search of his house was minimal. The Court stated:
If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. [footnotes omitted]
Id., 452 U.S. at 704-705, 101 S.Ct. at 2595.
In a footnote, the Court continued: "Although special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case, we are persuaded that this routine detention of residents of a house while it was being searched for contraband pursuant to a valid warrant is not such a case." Id. at 705, fn. 21, 101 S.Ct. at 2595-2596, fn. 21.
Summers was interpreted by the Louisiana Supreme Court in State v. Beals, 410 So.2d 745 (La.1982), the case upon which the trial court based its ruling in this case. In Beals, drugs were seized from the defendant's pocket during the execution of a search warrant for her house. Unlike in Summers, where the search of the defendant was made incident to his arrest for contraband found in his house, in Beals the defendant was searched as a part of the execution of the warrant. Thus, the issue before the Court was whether the issuance of the search warrant for the defendant's house authorized the officers executing the warrant to search the outer clothing of the defendant. The Court cited Summers and Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), where the U.S. Supreme Court had held that the issuance of a search warrant for a bar and the bartender working there did not extend to the search of a patron of the bar in the absence of any indication that the bar was frequented by drug users or that patrons were seen using drugs in the bar. The Louisiana Supreme Court in Beals noted that the affidavit for the search warrant indicated that occupant of the residence had been selling drugs from the residence, that drugs were seen in plain view on a table in the residence, and that an earlier search of the apartment had revealed drugs. Thus, the Court noted, the officers had reason to believe that the defendant had "a special connection with the premises and that she was in possession of contraband." State v. Beals, 410 So.2d at 748. The Court held:
Our specific but narrow holding under the facts and circumstances of this case is that where a warrant to search a residence for contraband is issued on probable cause based on information that the occupant of the residence participated in the sale of drugs at the residence three days prior to the issuance of the warrant, the reasonable scope of the warrant extends to a search of the pockets of the outer clothing of the resident of the premises who is on the premises at the time it is searched.

Ybarra notes that the Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy of persons, not places." It is equally true that crimes *115 are committed by persons, not places. A warrant to search a place based on probable cause information that the resident of that place has committed or is committing a crime in that place authorizes the search of the resident as reasonably and necessarily within the scope of the warrant.
State v. Beals, 410 So.2d at 748-749.
Here, unlike in both Summers and Beals, Ms. Brown was not a resident of the house to be searched, nor was she even a known suspect with respect to the narcotics violations connected with the house. The affidavit for the search warrant noted that Eugene Jarrow, who lived at the residence, was selling cocaine from the residence and also from his car at various places in the Carrollton area. The affidavit does not mention Ms. Brown nor even any other woman except for an unidentified and undescribed female driver of a van which came to the house, the male passenger of which entered the house and then exited carrying a small brown bag.[1] Indeed, the only reason Ms. Brown was detained was because she happened to be leaving the house when the officers arrived to execute the warrant. At the hearing when Det. Imbraguglio was asked if Ms. Brown had been implicated in the surveillance of the residence, he answered: "No, not to my knowledge." Thus, the connection between the defendant and the place to be search, which was present in both Summers and Beals, was lacking here. In addition, it does not appear that there was any contraband in plain view of which Ms. Brown would have been aware just by being in the house, as was present in Beals.
In State v. Range, 93-1693 (La.App. 1st Cir. 8/5/94), 642 So.2d 1318[2], the defendant was present during the execution of a search warrant for a crack house. The officers executing the warrant searched the defendant and found cocaine in his pants pocket. Contraband was found in plain view in two other rooms in the house, but not in the room where the defendant was found. On appeal, the court upheld the validity of this search, finding that the particular circumstances of the case distinguished it from Ybarra. Rather than being in a public place to which there was no apparent connection, the defendant was found in a private residence, the access to which was presumably limited, thereby raising "a stronger inference of connection" between the defendant and the house to be searched. The defendant's presence suggested an active role in the drug activities, rather than his just being someone unaware of illegal activities who just happened to be present when the warrant was executed. In addition, many suspected sales of contraband from the house were observed within twenty-four hours of the execution of the warrant. The court found that these factors provided probable cause to believe that the defendant was concealing drugs and that the probable cause was not based on "mere propinquity to others independently suspected of criminal activity." State v. Range, 93-1693 at 11, 642 So.2d at 1324.
By contrast, here there was no indication when the officers searched her that Ms. Brown participated in any drug activity in the house. There was no contraband found in plain view of which could lead the officers to believe that she was involved in drug sales; the drugs were found in Ms. Williams' pocket and Ms. Breely's bra. Unlike the defendants in Beals and Summers, Ms. Brown had no known connection to the house to be searched other than her exit at the time the warrant was searched. It appears that despite the State's efforts, the evidence adduced at the hearing showed only a "mere propinquity to others independently suspected of criminal activity." Applying the reasoning of Summers and Beals, it does not appear the issuance of the search warrant for the house authorized the officers to search Ms. Brown.
In the alternative, the State argues that even if the warrant did not authorize the officers to search Ms. Brown, they had reasonable suspicion of criminal activity on her part to detain her and conduct at pat down frisk for weapons which would also be extended to her purse. The authorization for a temporary stop by a police officer of a person *116 in a public place is set forth in La.C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Smith, 94-1502 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078; State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992). As this court noted in Smith:
A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion that the person is, has been, or is about to be engaged in criminal conduct. La.Code Crim.Proc. Ann. art. 215.1 (West 1991); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). Reasonable suspicion for an investigatory stop is something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference. State v. Albert, 553 So.2d 967 (La.App. 4th Cir.1989); State v. Smith, 489 So.2d 966 (La.App. 4th Cir. 1986).
The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62, 65 (La.1993).
State v. Smith, 94-1502 pp. 4-5, 649 So.2d at 1082. In addition, once an officer has reasonable suspicion to detain a suspect, paragraph B of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La.1979). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5, 649 So.2d at 1078, 1082.
Here, however, the only facts the officers knew when they searched Ms. Brown was that she had just exited a house for which they had a search warrant. The officers had no knowledge that Ms. Brown was involved in the drug sales from the house. Indeed, the tip from the confidential informant stated that the person targeted in the surveillance, Eugene Jarrow, mostly sold in the Carrollton area from his car and only sold from the residence to his trusted friends. The surveillance of the house two days before the issuance of the warrant revealed only one suspected drug sale from the house, and that sale was to a man. Taken as a whole, it does not appear the officers would have had reasonable suspicion of criminal activity to stop and conduct a pat down search of Ms. Brown. And because the officers were present to execute the warrant, there was no need to detain her in the event she might tip off someone about the raid.
As noted by this court in State v. Scull, 93-2360, p. 9 (La.App. 4th Cir. 6/30/94), 639 So.2d 1239, 1245[3]: "The trial court is vested with great discretion when ruling on motion to suppress." See also State v. Williams, 594 So.2d 476, 479 (La. App. 4th Cir.1992). The detention and search of Ms. Brown was not authorized by the search warrant nor as an extended pat down search pursuant to reasonable suspicion of criminal activity on Ms. Brown's part. As such, the trial court did not abuse its *117 discretion by suppressing the .7 grams of cocaine seized from Ms. Brown's purse.[4]
ACCORDINGLY, the writ is granted and the ruling of the trial court is affirmed.
WRIT GRANTED. RULING OF THE TRIAL COURT AFFIRMED.
NOTES
[1] The search warrant affidavit was included in the original application filed by the State.
[2] Writ den. 94-2898 (La. 6/30/95), 657 So.2d 1021.
[3] Writ denied 94-2058 (La. 11/11/94), 644 So.2d 391.
[4] The trial court ruled that the drugs seized from Ms. Williams and Ms. Breely were admissible, and Ms. Williams has already pled guilty in this case.