680 So.2d 1237 (1996)
STATE of Louisiana
v.
Harold SNEED.
No. 95-KA-2326.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1996.
C. Gary Wainwright, New Orleans, for Defendant/Appellant Harold Sneed.
Harry F. Connick, District Attorney, Karen Godail Arena, Assistant Distrcit Attorney of Orleans Parish, New Orleans, for appellee State of Louisiana.
Before BARRY, BYRNES and MURRAY, JJ.
MURRAY, Judge.
Harold Sneed entered guilty pleas to possession of heroin in violation of La. Revised Statute § 40:966(C)(1) and to being a multiple offender, but reserved his right, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), to appeal the denial of his motion to suppress. Finding that the trial court erred as a matter of law in failing to suppress the evidence and Mr. Sneed's statements, we reverse.

FACTS AND PROCEEDINGS BELOW
New Orleans Police Sergeant Bruce Little testified that on March 20, 1995, he met with *1238 an untested confidential informant who said that wholesale heroin distribution was taking place at an address on South Rendon Street. This informant admitted he also was a heroin user and seller, but Sgt. Little denied that information was given to "work off" charges arising from an arrest. The informant identified the seller on South Rendon Street as Adam Lawrence. Sgt. Little's investigation confirmed that Mr. Lawrence lived at the address given, that he had a lengthy arrest history, and that both local and federal investigators considered him a current narcotics trafficker. Additionally, a car parked in the driveway of the address was registered to Adam Lawrence.
The police set up a surveillance of the house at issue that same day. Mr. Sneed was seen arriving at the house in a silver Impala, accompanied by a female passenger. Mr. Sneed got out of the car alone and went to the front door where he was met by Mr. Lawrence. Both men went inside, then Mr. Sneed exited the house about a minute later and returned to his car. As he was driving away, Sgt. Little radioed for nearby undercover officers "to make an investigatory stop" of the vehicle and its occupants.
Officer Lawrence Green testified that he, along with two other plainclothes policemen, had been instructed to remain in the area of Tulane Avenue and Jefferson Davis Parkway as backup for a narcotics investigation. After Sgt. Little's message was received, they located the silver Impala as it pulled into a gas station. The officers positioned their unmarked police car so that the Impala could not go forward, then got out and identified themselves as they approached the car. After Mr. Sneed got out, the officers informed him of the narcotics investigation and the surveillance on South Rendon Street. They advised him of his Miranda rights. Officer Green testified that at this point, Mr. Sneed "got kind of nervous and said, `I know what you're looking for.' [The defendant] kind of like broke down and said, `It's under the backseat.'" Mr. Sneed also asked the police not to arrest his wife, who was pregnant, because she had "nothing to do with it."
A search of the Impala resulted in the seizure of nineteen tin-foil packets of heroin from under the seat and $777 cash from a handbag found on the driver's side floor board. Mr. Sneed and his wife were arrested and taken to the police station, where the defendant was again advised of his rights. After executing a written waiver of rights, Mr. Sneed told Sgt. Little and others that he had gone to Mr. Lawrence's to pay for heroin purchased a week earlier, and that the drugs found in the car were what was left of that purchase.
After hearing this testimony and brief arguments from the parties, the trial court ruled that the motion to suppress the evidence and Mr. Sneed's statements was denied because the officers had reasonable suspicion to detain and question Mr. Sneed. Mr. Sneed filed a writ application with this court, but before any disposition was made on the writ he entered his Crosby plea and was sentenced as a second offender. This appeal followed and was consolidated with the writ application.

DISCUSSION
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim.Proc.Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La. App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138, p. 5 (La.App.2d Cir. 8/17/94), 641 So.2d 1081, 1084.
Mr. Sneed contends that the trial court erred in finding the police had reasonable suspicion to stop his car. He therefore argues that the heroin and money were illegally seized, and his statements illegally obtained because they constituted fruit of the poisonous tree under Wong Sun v. United *1239 States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Relying primarily upon Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the State asserts that under the totality of the circumstances, the informant's tip was sufficiently corroborated to justify the investigatory stop in this case. The State also notes that the police neither directed Mr. Sneed into the gas station nor forced him from his car, and that after being advised of his rights but before being questioned, Mr. Sneed voluntarily incriminated himself. It is therefore argued that the motion to suppress was properly denied.
The State's reliance on Alabama v. White is misplaced.[1] The issue here is not whether the informant's tip was sufficient to give the police a justifiable belief that drug activity was being conducted at the house on South Rendon Street. Rather the issue is whether the officers had a reasonable suspicion that Mr. Sneed was committing, had committed, or was about to commit a crime when he drove away from that house. The only evidence presented on this issue was Sgt. Little's testimony that other officers had observed Mr. Sneed stop his car in front of the house, go inside for "about one minute," then drive away. There was no testimony that the area had a reputation for drug trafficking nor that there had been a succession of brief visits to the house by other individuals. No one testified that Mr. Sneed appeared nervous, furtive or secretive when he entered or departed the residence. Nothing indicates that Mr. Sneed carried anything into or out of the residence. It is not alleged that, after leaving the Rendon Street address, the driver of the Impala committed a traffic violation. Mr. Sneed was stopped solely because he briefly had visited a residence that was under surveillance for drug activity.
This court has previously ruled that an individual's mere presence at a residence about to be searched pursuant to a warrant does not establish "reasonable suspicion" under Article 215.1 of the Code of Criminal Procedure. State v. Williams, 95-1971 (La. App. 4th Cir. 11/16/95), 665 So.2d 112. As in Williams, the officers here had nothing to connect Mr. Sneed to illegal activities at the Rendon Street house; the informant had not described either him or his car when detailing the alleged drug trafficking by Mr. Lawrence. Instead, Mr. Sneed was stopped based upon "mere propinquity to others independently suspected of criminal activity." Williams at p. 6, 665 So.2d at 115, quoting State v. Range, 93-1693, p. 11 (La.App. 1st Cir. 8/5/94), 642 So.2d 1318, 1324, writ denied, 94-2898 (La.6/30/95), 657 So.2d 1021.
The facts established here are thus distinguishable from those in other cases cited by the State as supporting the officers' actions. In State v. Finne, 92-2555 (La.App. 4th Cir. 2/11/94), 632 So.2d 819, several others, including a known narcotics offender, had briefly visited a house under surveillance before that defendant was approached on departing the house. In State v. Richardson, 575 So.2d 421 (La.App. 4th Cir.), writ denied, 578 So.2d 131 (La.1991), the defendant was stopped because he matched the description of a person observed conducting drug transactions. In State v. Harris, 613 So.2d 807 (La.App. 4th Cir.), writ denied, 629 So.2d 388 (La.1993), the defendant was seen walking into pouring rain to meet with another man in an area known to harbor drug traffickers, and he fled when the police approached.
None of these additional factors supporting a suspicion of participation in drug activity were shown to exist in this case. Although the residence was reasonably suspected as being used for narcotics transactions, Mr. Sneed's brief presence there, without more, was equally consistent with innocent behavior as with criminal conduct.
Consequently, we thus find that there were not sufficient articulable facts to justify Mr. Sneed's initial detention.[2] Because both the evidence and the statements were obtained as a result of this illegal stop, the trial court's denial of Mr. Sneed's motions to suppress *1240 was erroneous and his Crosby plea must be vacated under Wong Sun v. United States, supra. Therefore, we pretermit discussion of the additional assignments of error.
REVERSED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting.
I respectfully dissent based on my conclusion that the investigatory stop was reasonable, and the evidence was properly seized under the totality of circumstances.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 626 So.2d 707 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.), writ denied, 626 So.2d 1177 (La.1993). The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993); State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.), writ denied, 530 So.2d 83 (La.1988).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081.
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop under the totality of the circumstances. See also State v. Morales, 583 So.2d 129 (La.App. 4 Cir.1991); State v. Thomas, 583 So.2d 895 (La.App. 1 Cir.1991); State v. Wimberly, 588 So.2d 1343 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1333 (1992).
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), this court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court stated:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not the case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330.
Considering the increase in drug activity and major problem endangering innocent people as noted in State v. Ganier, supra, and also because of the endangerment of the lives of police in pursuing drug investigations, deference should be given to the experience of the policemen who were present at the time of an incident. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts.
In the present case the untested confidential informant's tip was corroborated by computer and earlier information from several confidential informants that Adam Lawrence had a history of heroin trafficking and currently *1241 was a drug trafficker. The police verified that Lawrence's car was in the driveway of 530 South Rendon Street and that Lawrence lived at that address. Although the defendant argues that nothing connected the defendant or his vehicle with the alleged criminal activity, the officers' surveillance showed that Sneed's companion remained in Sneed's car while Sneed approached the house, was met at the front door by an elderly black male believed to be Lawrence, and both men went inside. Based on the corroboration of the informant's tip by computer and police surveillance where the defendant left approximately one minute after meeting with Lawrence in his residence, and considering the officers' experience, under the totality of circumstances the officers had reasonable suspicion to believe that the defendant was engaging in illegal activity so that the officers had prior justification to make the investigatory stop. The intrusiveness of the investigatory stop did not invade an expectation of privacy that society is prepared to recognize as reasonable under the totality of circumstances.
The officers properly made an investigatory stop, detained the defendant and informed him that he was under investigation for narcotics and read him his Miranda rights. The defendant stated that he knew what the officers were looking for, and it was under the backseat. Based upon the defendant's statement properly obtained immediately after the defendant was given his Miranda rights after he exited the vehicle at the gas station, the subsequent seizure of the evidence from the vehicle was proper, and the officers had probable cause to arrest the defendant. The defendant was given his Miranda rights, and he signed a waiver of rights form before he made a statement at the police station so that statement was properly taken.
The defendant also contends that the trial court erred in not ordering Officer Little to confirm or deny the identity of the confidential informant when the identity of the informant was known to the defendant. He argues that the confidential informant's privilege no longer applies once the informer's identity becomes known. At the motion hearing, the defendant asked Officer Little whether the informant was known as either Santa Cruz or Crocket. The defendant argued that he was trying to prove that Officer Little perjured himself when he denied that the informant was trying to work off charges stemming from an arrest earlier that day. The trial court sustained the State's objection.
Generally, the identity of a confidential informant who supplies information concerning a crime to law enforcement officers is privileged, and that identity should be divulged only under exceptional circumstances which must be established by the defendant. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Oliver, 430 So.2d 650 (La.), certiorari denied, Oliver v. Louisiana, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Clouatre, 482 So.2d 106 (La.App. 4 Cir.1986). To determine whether the informant's identity must be disclosed, the following factors are considered: (1) whether the defendant's exceptional circumstances require disclosure; (2) whether the informant participated in the crime; and (3) what was the State's interest in nondisclosure of the informant's identity. State v. Clark, 553 So.2d 1020 (La.App. 4 Cir.1989).
In the present case, the trial court properly noted that the defendant was free to call the suspected informant as a witness to confirm his identity. Further, the identity of the informant was not pertinent to the charge against the defendant because the informant did not name the defendant in the disclosed information. The trial court properly denied the defendant's request for the State's disclosure of the identity of the informant.
Accordingly, I would affirm the trial court's denial of the motion to suppress, and I would affirm the defendant's conviction.
NOTES
[1] Testimony suggests that a warrant to search the house was, in fact, obtained shortly after the events at issue here.
[2] Officer Green testified that once his police car had pulled into the gas station, Mr. Sneed was not free to leave because the officers "intended to question him" as Sgt. Little had instructed.