# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**08-1292**

**STATE OF LOUISIANA**

**VERSUS**

**ROBERT WAYNE AYMOND, SR.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 286,999
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**Hon. James C. Downs**
**District Attorney - Ninth JDC**
**Willard Trichel Armitage Jr.**
**Assistant District Attorney**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Plaintiff-Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant-Appellant:**
**Robert Wayne Aymond, Sr.**

**PICKETT, Judge.**

<u>FACTS</u>

Around 8:00 p.m. on March 19, 2007, the victim, K.C., was sitting on a swing in Kees Park in Pineville, Louisiana, listening to music on her CD player.[1] A white man on a bicycle, wearing a dark t-shirt, dark pants, and a baseball cap approached her, and they had a short conversation. K.C. told the man to leave her alone, and he left the area. The man returned, however, and grabbed K.C. by the arm. He said he had a gun and would shoot her if she tried to run or scream.

The man dragged K.C. to a wooded area at the back of the park and told her to remove her clothes. K.C. refused to completely disrobe, but unzipped and dropped her pants. At some point when they first arrived at the wooded area, the man forced K.C. to perform oral sex and ejaculated in her mouth. The man then attempted anal and vaginal sex with K.C. but was able to achieve only partial penetration. He removed his shirt and used it to wipe between her legs and shoved the shirt into K.C.'s vagina. Lastly, he shoved his fingers into her vagina. The man told K.C. to pull up her pants, and he led her through the wooded area. When he started to walk away, K.C. "took off the other direction" and ran to her nearby home.

K.C. testified she had seen this man before the night of the attack, possibly three times. He stopped her once and spoke to her briefly, and about a week later, he stopped her and her husband and spoke to them.

On the night of the attack, Officer Neal Edwards, a patrolman with the Pineville Police Department, saw a white man riding a bicycle on the sidewalk in

---

[1]In accordance with La.R.S. 46:1844(W), initials have been used to protect the privacy of the victim.

Pineville around 8:10 p.m. The man was wearing a black shirt with gold lettering on it, black pants, a dark blue cap and black shoes. Officer Edwards verbally warned the man about a city ordinance against riding an unlit bicycle at night. At trial, Officer Edwards identified the defendant as the man he saw that night.

Between 7:45 p.m. and 8:15 p.m. on March 19, 2007, Trudy Nelson, a security guard at Louisiana College in Pineville was standing on the porch of the security office when she saw a white man walking his bicycle. The man was about six foot, five inches tall, of medium build, with facial hair stubble and a full head of hair. He was wearing a black t-shirt with a yellow design, black pants and dark tennis shoes, and he had an approximate twenty-six-inch bike with racing handlebars. After a short conversation with Nelson, the man headed north toward the Kees Park area.

Nelson carried a radio connected with the Pineville Police Department. When she heard a call about a man on a bicycle attacking a lady in Kees Park, she called the police and informed them about the man she had seen approximately an hour earlier.

K.C.'s husband called the police and reported the rape when she got home. Officer Vincent Cyprian of the Pineville Police Department answered the call and questioned K.C. about the incident. K.C. was crying and seemed fearful and shaken. Officer Cyprian then went to Kees Park, but he did not cross the creek into the wooded area where K.C. said she had been raped.

Meanwhile, Detective Tamara Franklin of the Pineville Police Department took K.C. to the Rapides Regional Medical Center to have a sexual examination kit performed by Dr. Francis M. Brian, Jr., the Rapides Parish coroner. Dr. Brian's examination of K.C. revealed a very large abrasion on her back, abrasions on her knees, what appeared to be a fingerprint on her neck, mud on her feet and organic

2

particulate matter resembling leafy material in the area of her buttocks between her legs. Dr. Brian found K.C. to have a flat affect, not unusual for a rape victim. His observations, the history related by K.C. and his examination were consistent with sexual assault. Although Dr. Brian found no evidence of vaginal or rectal tearing or trauma, and although the lack of tearing can be consistent with consensual sex, he did not consider the lack of tearing or trauma to be unusual in a rape case.

As part of the sexual examination kit, Dr. Brian took swabs of the mouth, vaginal and anal areas, as well as vaginal washings, to look for the presence of DNA other than that of K.C. Those swabs became part of the evidence sent to the North Louisiana Criminalistics Laboratory for DNA testing.

Kelly Raley, a forensic biologist with the laboratory, examined the swabs, washings, K.C.'s pants and the defendant's jeans and t-shirts for DNA in hopes of comparing a known DNA sample with an unknown one. Her search, however, yielded no sperm or prostate specific antigen (PSA) on K.C.'s pants, the defendant's clothing, the oral swab or vaginal washings. Although PSA was present on the rectal swab, there was no sperm or amplifiable DNA on it. PSA is a protein found in male seminal fluid, indicating seminal fluid may have been present.

Detective Beau Edmonds was part of the team who answered the call the night of the incident and investigated it. He met a team at the back end of the park, where they found a stereo headset on the creek bank. He returned to the site the next day with Detective Franklin and K.C. and found K.C.'s CD player, CD case and flip-flop shoes. K.C. testified she herself located the items.

Because K.C.'s description of her attacker's clothing matched the clothing description shown on the field interview with the defendant completed by Officer

3

Neal Edwards the night before, Detective Franklin developed the defendant, Robert Wayne Aymond, Sr., as a suspect and requested a photo lineup from the Louisiana State Police. She gave the defendant's name to the analyst on duty, who matched him with five others to create a photo lineup. The analyst used a picture of the defendant from the State Police database and e-mailed the photo lineup to Detective Franklin. She then printed the photographs, labeled each picture with a number, cut out each picture and placed them all in an envelope.

Detective Roy Fore met K.C. at her home, where Detectives Franklin and Edmonds introduced him and left him alone with K.C. to present the lineup. Protocol called for this type of presentation by someone without knowledge of the case so that any type of coercion on Detective Fore's part was not an issue. Indeed, Detective Fore did not know which photo portrayed the suspect. He opened the envelope, shuffled the six photos and presented them in random order, placing one on top of the other for K.C. to view.

As each photo was presented, K.C. shook her head until Detective Fore presented photo number six. K.C. gave no verbal indication when she saw that photo, but appeared to be upset and about to cry. Detective Fore presented the set of photos again and got the same reaction the second time K.C. saw photo number six. Although K.C. excluded the other five photos and did not exclude the photo of the defendant, K.C. never identified the man in the photo as her attacker. Her reaction to the photo indicated to Detective Fore the man could possibly be the suspect. When Detective Fore told Detectives Franklin and Edmonds of K.C.'s reaction, they confirmed the man in photo number six was their suspect. At trial, Detective Fore identified the defendant as the man in photo number six.

4

K.C. testified she told Officer Cyprian she could identify her attacker if she saw him again. She said she never told the police she could not identify her attacker. She learned the defendant's name when she read it in the newspaper. At one point, K.C. testified she positively identified the defendant the first time Detective Fore showed her the photos. She told Detective Fore the defendant was the man who raped her. At another time, she testified she told Detective Fore she was not certain, but one of the pictures looked like her attacker. However, when Detective Franklin showed her the defendant's mug shot, she knew it was him. She then said that after Detective Fore left, Detectives Franklin and Edmonds told her the defendant had said enough for them to know he did it. K.C. testified Detective Franklin showed her the defendant's mug shot, a different photo than she had seen in the lineup, and told K.C. the defendant had confessed. Someone else, whose identity K.C. did not recall, had also told her the picture she "had picked out of the lineup just happened to be the right guy."

In contrast, Detective Franklin testified K.C. could never positively identified the defendant. Detective Franklin said she never showed K.C. a mug shot of the defendant, and she never told K.C. the defendant had confessed. K.C. testified that, if any police officers testified she had said she could not identify her attacker, they were untruthful.

Detective Franklin provided an affidavit and obtained a search warrant for the defendant's home on March 22, 2007. The warrant sought property described as "Black T shirt with gold witting [sic], Black pair of blue jeans, dark Blue Baseball hat, Mountain bike, Epithelial Cells via Buccal Swab."

5

When Detective Franklin arrived at the defendant's home to execute the search warrant, his mother showed her to the defendant's bedroom. The defendant was found behind the bathroom door, with the bathroom light off. Detectives Franklin and Edmonds took the defendant into custody, placed him in handcuffs, advised him of his rights and transported him to the Pineville Police Department. Items seized as a result of the warrant were black jeans, black tennis shoes, two dark blue baseball caps, a black cap, a light blue cap, a black t-shirt with "G-Money" written on it and a black t-shirt with "I am what I am" written on it.

At the station, Detective Franklin read the defendant his rights and watched him sign an Advice of Rights form and a contact information form. The defendant did not ask for legal counsel until after he had signed the forms and Detective Franklin talked to him for approximately twenty minutes. The defendant was not handcuffed or restrained in any manner during the interview. When the defendant indicated he did not want to talk any longer and wanted a lawyer, the interview stopped. The defendant never appeared to be a slow learner to Detective Franklin, and he appeared to understand the constitutional rights that were reviewed with him. Again, twenty minutes elapsed between the time Detective Franklin explained the defendant's right to counsel and the time the defendant requested a lawyer, indicating he had at least the level of understanding required to link his right to his request after that length of time.

During the interview, prior to the defendant's request for counsel, the defendant first told Detective Franklin he had never seen K.C. before and he had never had any kind of contact with her. He said he had been at the home of a family member in Alexandria and he left that residence and rode his bicycle directly to his

6

residence, with no stops. However, when Detective Franklin advised she knew of the field investigation by Officer Edwards, the defendant admitted he had been at Kees Park and he had seen K.C.

According to the defendant, K.C. approached him and said she would have sex with him for a cigarette. The defendant told Detective Franklin he refused K.C.'s offer and went home. When asked about the whereabouts of his bicycle, the defendant said it had been stolen from his residence. He then asked for an attorney, and the interview ended.

During the interview, the defendant asked to use the restroom. He entered the restroom alone, shut the door and stayed for a long time. Detective Edmonds knocked on the door and the defendant indicated he was not finished. When another officer reported hearing a noise in the bathroom, Detective Edmonds ran to the bathroom door, found it locked and ran outside. He found the defendant trying to push up the window, trying to get out. Detective Franklin also saw the defendant's arm protruding halfway out of the window. The defendant had climbed into the bathtub below the window and was found in the bathtub when the bathroom door was opened. There was no evidence he had actually used the bathroom. The defendant was then released to the jailer.

The defendant was charged with aggravated rape and convicted at a bench trial of forcible rape, in violation of La.R.S. 14:42.1. He was sentenced to twenty years at hard labor, the first two years to be served without benefit of probation, parole or suspension of sentence, and given credit for time served. He now appeals his conviction and alleges two assignments of error.

**ASSIGNMENTS OF ERROR**

1.  The trial court erred in not ruling on the defendant's motion to suppress the evidence.

2.  The evidence was insufficient to support the conviction for forcible rape.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant alleges the trial court erred by failing to rule on his pre-trial motion to suppress evidence. On March 18, 2008, the defendant filed a "Motion to Suppress and In Limine" in open court which asked the trial court:

> . . . to suppress statements of other crimes, and evidence by the defendant and witnesses for the following reasons to wit:

> 1.
> That all statements made by [Defendant] to officers at the time of his arrest when he stated, "I want a lawyer." (sic)

> 2.
> That all statements made by Robert Smith (sic) which the State notified defense Counsel of in its 768 Notice at the end of the jury selection on yesterday.

> 3.
> All statements by Pineville police in the video tape narrating the scene of the crime which the victim told police.

A second "Motion to Suppress and In Limine" filed in open court the same day asked the court:

> . . . to suppress the introduction of any videotapes for the following reasons to wit:

> 1.

On information and belief on the STATE will attempt to introduce copies of videotapes without any proof of authenticity or chain custody (sic).

Trial began the same day, March 18, 2008. At the beginning of the proceedings, the defendant's counsel raised the motions. She argued that a videotape contained a narrative by Detective Franklin that was hearsay. After that short statement, she told the court she would "submit the motions based on what is written." The state's attorney advised the court he would probably not use the video, but if he did, he would turn down the audio so that the narrative would not be heard. Thus, any issue regarding the suppression of the videotape became moot at that point. The tape was not used at trial. The defendant's counsel expressed no further objection.

The state's attorney further advised the court that, with regard to the defendant's efforts to suppress his statements, the state intended to introduce only statements made by the defendant prior to the time the defendant indicated he wanted an attorney. The court referred that issue "to the merits," noting the state would have to provide the proper foundation for any such evidence to be admitted. The defendant's counsel stated no objection.

In fact, an evidentiary hearing on a motion to suppress is mandatory only when it alleges facts that require the granting of relief. *State v. Porter*, 615 So.2d 1073 (La.App. 4 Cir.), *writ denied*, 616 So.2d 673 (La.1993). The defendant's motions here allege no facts at all. Rather, they simply ask the trial court, without any memoranda or legal authority to support them, to suppress statements and video tapes.

9

Even though, according to *Porter*, a hearing of the motions was not mandatory, the trial court nevertheless addressed the substance of the motions without formally pronouncing whether the motions were granted or denied. Once the state's attorney informed the court he would not seek to introduce the video tapes into evidence, or if he did, he would turn down the volume so that the objectionable material would not be audible, that issue required no further hearing. Further, when the trial judge informed the parties he would not allow other objectionable evidence into the record without the proper foundation, he removed the defendant's issues regarding statements the defendant made prior to advising he wanted a lawyer, chain of custody and proof of authenticity. The state expressed no intention to use any other statements.

Importantly, the defendant failed to object when the trial judge announced how he would deal with the issues addressed in the motions. When the defendant's counsel first raised the motions to suppress, she brought up only the issue of the video tapes. The state's attorney, not the defendant, asked to address the issue of the statements. When the state's attorney said he intended to use only statements made prior to the time the defendant said he wanted a lawyer, this exchange followed:

THE COURT:

> Well, let's just refer that to the merits. You would have to show that anyway. You'd have to provide a foundation at trial.
>
> So you're not going to use the videotape and you'll provide a foundation for any statements made. And anything that was said was said prior to him saying, I want a lawyer, is what you said?

[STATE'S COUNSEL]

> That's right.

THE COURT:

10

All right.  Well, it would be referred to the merits and I'll pay attention to that then, Ms. Brown.

[DEFENDANT'S COUNSEL]

Okay. . . .

The fifth circuit has held, under similar facts, that a defendant waives his right to a hearing of a motion to suppress when he proceeds to trial without raising any issues regarding the motion.  *State v. Washington*, 98-69 (La.App. 5 Cir. 1/26/99), 727 So.2d 673.  In *Washington*, the defendant accepted the state's assertion that no motion to suppress was applicable, lodged no further objection and did not reurge any motion to suppress prior to trial.  The fifth circuit held the defendant therefore waived his right to hearing of his motion to suppress.

The same thing happened here.  The defendant raised the issue of the motions to suppress filed that day in open court, and the court indicated it would require the proper foundation for the statements that were the subject of the motions.  The defendant expressed no objection to the court's plan, and in fact responded with "okay."  Trial proceeded with no objection to the court's handling of the motions and without any further motions being made.  The defendant thus waived his right to argue this issue on appeal.  *Id.*

The defendant's brief mistakenly argues the motions were not decided prior to trial, but were erroneously deferred and then denied during the trial.  In reality, the defendant erroneously confuses the motion to suppress made during trial with the two motions addressed at the beginning of trial.  The first two motions were not revisited during trial.  However, during the cross-examination of K.C., the defendant's counsel questioned K.C. about the photo lineup and raised a new motion to

11

suppress—apparently one related to a mug shot, not the video tapes and statements addressed in the original motions:

[THE WITNESS, K.C.]

A.     I picked a picture out and I said, "I'm not for certain, but this looks like him." Then when she showed me his mug shot –

Q.     Who is she?

A.     – in color –

Q.     Who is she?

A.     Detective Franklin.

Q.     Okay. She showed you what – when now?

A.     Oh, God.

MS. BROWN:

Motion to Suppress requested, Your Honor.

THE COURT:

Motion to Suppress?

MS. BROWN:

Yes.

THE COURT:

All right.

MS. BROWN:

Go ahead.

THE COURT:

The Motion to Suppress is denied.

12

MS. BROWN:

Okay.

THE COURT:

A Motion to Suppress is before trial –

THE WITNESS:

When she showed me –

THE COURT:

– not during the trial.

The defendant's counsel then continued with her questioning of K.C. along the same lines, asking her about the defendant's mug shot.

The defendant argues the trial court deferred the motions to suppress to the merits and then denied the same motions during the trial because they had to be made prior to trial. The above colloquy show the exchange actually concerned a new and different motion to suppress, apparently addressing K.C.'s viewing of the defendant's mug shot, although the material sought to be suppressed was never clearly identified.

A motion to suppress must be filed within fifteen days after arraignment unless the opportunity for such a filing did not exist, neither the defendant nor his counsel was aware of the existence of the evidence or the failure to timely file the motion was otherwise excusable. La.Code Crim.P. arts. 521, 703(C). The trial court has great discretion in ruling on a motion to suppress. *State v. Williams*, 95-1971 (La.App. 4 Cir. 11/16/95), 665 So.2d 112.

Here, the motion made during the defendant's trial did not even clearly identify the evidence sought to be suppressed. The defendant's counsel simply stated, "Motion to Suppress requested," when K.C. mentioned a mug shot, and the trial judge

13

responded with a denial of the motion. No argument was made, no evidence was presented to show if or why the defendant or his counsel was previously unaware of the evidence, and no excuse was shown for the untimely motion. And, the mug shot was never offered as evidence. The trial judge properly denied the motion to suppress made during trial, as it was within his discretion to do.

The defendant's brief argues that a hearing of the motion to suppress "could have resolved factual issues involving critical violations of [the defendant]'s constitutional rights." The defendant complains of "the illegal search of his home, his illegal arrest, and his illegal interrogation" and the out-of-court "suggestive identification" of the defendant. The motions to suppress, however, never raised any issues involving the search, the arrest or K.C.'s "suggestive identification" of the defendant. Suppression of evidence of the alleged illegal interrogation was addressed at the beginning of trial, without objection from the defendant.

A new basis for a motion to suppress cannot be raised for the first time on appeal. A defendant seeking review of a motion to suppress on appeal is limited to the grounds articulated at trial. *State v. Johnson*, 389 So.2d 372 (La.1980); *State v. Bass*, 595 So.2d 820 (La.App. 2 Cir.), *writ denied*, 598 So.2d 373 (La.1992). Here, the defendant's brief argues issues concerning probable cause to issue the search warrant, reasonable cause for the arrest and the procedure for K.C.'s identification of the defendant. None of these issues were raised in the lower court. As such, they are improperly presented on appeal and cannot be considered. *Id.*

### ASSIGNMENT OF ERROR NUMBER TWO

As his second assignment of error, the defendant argues the evidence at trial was insufficient to convict him of forcible rape. The defendant argues the only

14

evidence linking him to the rape was K.C.'s identification of him at the trial.    This is an incorrect assessment of the evidence presented at trial.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)).  The essential elements of the crime of forcible rape under the facts here are anal, oral or vaginal sexual intercourse without the lawful consent of the victim, when the victim is prevented from resisting by force or threats of physical violence, and the victim reasonably believes resistance would not prevent the rape.  La.R.S. 14:42.1(A)(1).

In this case, the trial judge evaluated the favorable evidence for both the state and the defendant when rendering his guilty verdict.  Favorable to the state was the description of the rapist's clothing as a dark shirt with gold writing that felt rubbery and dark pants.  The search of the defendant's home yielded clothing similar to what K.C. described. One of the items was a black t-shirt with thick writing that had a rubbery texture.  K.C.'s description of her attacker, except for her description of his hair at the time of his arrest and at trial, matched the defendant.  Photographs of K.C. showed scratches on her back and knees, along with a hand mark on her throat.  She was crying and fearful when police arrived at her home.  Dr. Brian found K.C. exhibited physical and emotional evidence of rape.  Organic debris found on K.C.'s body corroborated her testimony.

Items K.C. said she left in the area when she fled the scene were found where she said they would be. K.C. recognized her attacker because she had seen him three or four times prior to the night of the rape. The patrolman and a security guard saw the defendant in the area on a bicycle, in clothing that fit K.C.'s description of her attacker shortly before the rape occurred.

When the warrant was executed, police found the defendant hiding in the bathroom of his home. The defendant was untruthful about his actions on the night of the attack. He first said he had not stopped on his way home, then, when confronted with the fact an officer had talked to him that evening, admitted he had talked with K.C. at the park. Further, the defendant attempted to flee while he was being questioned at the police station, and the trial judge considered that fact as evidence of guilt. *See State v. Richards*, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07-1129 (La. 12/14/07), 970 So.2d 529 ("Evidence of flight, concealment, and attempt to avoid apprehension indicates consciousness of guilt." *Id.* at 172).

Evidence considered favorable to the defendant included the fact that K.C. could not identify him by name. She could not identify him from the photo lineup, even though she said she had seen the defendant three or four times before that night. Although the defendant told K.C. he had a gun, K.C. never saw a weapon, and none was ever found. K.C. said she thought her attacker wore white shoes. The defendant was described as wearing black shoes on the night of the assault, and black shoes were seized from his home. K.C. saw no tattoos on her attacker. The defendant had very large tattoos on both forearms. K.C. said her attacker had curly, scraggly hair, while the photo used in the photo lineup showed the defendant had close-cropped

16

hair. The trial judge, however, noted he never saw the defendant's booking photo, taken at the time of his arrest, and he did not know the date the photo used in the lineup was taken. No footprints, fingerprints or DNA were recovered.

The trial judge first found the evidence established K.C. was raped. The physical evidence was consistent with rape and with K.C.'s testimony. Thus, the next question addressed was who committed the rape. The time periods were consistent regarding the defendant's presence at the park. Indeed, the defendant himself admitted (after first denying he had stopped on his way home), that he was in the park and had talked to K.C. K.C.'s description of her attacker's clothing matched the clothing found at the defendant's home. The trial judge, because "[t]here's so much about the testimony that's corroborated," had no doubt the defendant committed the rape.

Discussing his decision to convict the defendant of forcible rape rather than aggravated rape, the trial judge found the element of oral, anal or vaginal intercourse was present. He then found K.C. was prevented from resisting the act by force or threats of physical violence and reasonably believed her resistance would not prevent the rape.

The trial judge defined "reasonable doubt" as "based on reason and common sense, and it is present when after you have carefully considered all the evidence . . . you cannot say you're firmly convinced of the charge." We find the trial judge acted rationally in finding proof beyond a reasonable doubt of the essential elements of forcible rape. *See Leger*, 936 So.2d 108.

17

When reviewed in light of the *Jackson* standard, we find the totality of the evidence is sufficient to establish Defendant's guilt beyond a reasonable doubt. We find the defendant's second assignment of error has no merit.

## CONCLUSION

The defendant's conviction for forcible rape is affirmed.

**AFFIRMED.**