STATE OF LOUISIANA     *     NO. 2019-K-0953

VERSUS     *

    COURT OF APPEAL

TROY COLLINS     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-735, SECTION "B"
Honorable Tracey Flemings-Davillier, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard,
Judge Sandra Cabrina Jenkins)

Leon Cannizzaro, District Attorney
Donna Andrieu, Assistant District Attorney
Scott Vincent, Assistant District Attorney
ORLEANS PARISH
619 S. White Street
New Orleans, Louisiana 70119

    COUNSEL FOR RESPONDENT/STATE OF LOUISIANA

Drew Lafontant
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, Louisiana 70119

    COUNSEL FOR RELATOR/DEFENDANT

                 **WRIT GRANTED;**
                 **JUDGMENT REVERSED**

# DECEMBER 4, 2019

Defendant, Troy Collins, seeks review of the district court's October 2, 2019 ruling denying his motion to suppress evidence and finding probable cause. Upon review of defendant's writ application and the State's response, and in light of applicable law and jurisprudence, we find the district court erred in denying defendant's motion to suppress and finding probable cause. For the reasons that follow, we grant defendant's writ, reverse the district court's ruling, grant defendant's motion to suppress evidence, and find no probable cause for defendant's arrest.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 29, 2019, the State filed a bill of information charging defendant with one count of possession of cocaine, in an amount less than two grams, in violation of La. R.S. 40:967(C)(1). At his arraignment on June 12, 2019, defendant entered a plea of not guilty. Subsequently, defendant filed a motion to suppress the evidence.

1

At the hearing on defendant's motion to suppress on October 2, 2019, the State offered the testimony of Officer Frank Vitriano of the New Orleans Police Department ("NOPD"). Ofc. Vitriano testified that on March 26, 2019, he was conducting narcotics surveillance with his partner, Officer Cody Odell, and Officer Thomas Wiltz, in an area known for illegal narcotics transactions. Ofc. Vitriano explained that Ofc. Wiltz was in a surveillance vehicle, "float[ing] the area," while he and Ofc. Odell waited "on the outskirts" to hear from Ofc. Wiltz, and "then we just proceed accordingly based on his transmissions." Ofc. Wiltz transmitted over the radio that he observed an unknown African-American male, wearing a gray hooded sweat jacket and gray sweatpants, enter a house at 1619 North Villere Street and exit in a relatively short period of time. Ofc. Wiltz also relayed which direction the man was travelling on foot. Based on that information, Ofc. Vitriano and Ofc. Odell responded to that area and located defendant, who fit the description provided by Ofc. Wiltz. Ofc. Vitriano testified that they made contact with defendant, placed him in handcuffs, and read him his Miranda rights, at which time he admitted to being in possession of narcotics. Ofc. Wiltz then identified the body worn camera that was activated at the time of defendant's arrest, which the State introduced into evidence.

On cross-examination, Ofc. Vitriano admitted that he had never seen or heard of defendant before that date and, moreover, Ofc. Wiltz had not reported observing defendant in possession of any contraband or engaged in a hand-to-hand transaction. Ofc. Vitriano also admitted that the encounter was not consensual,

2

stating that based on the surveillance conducted by Ofc. Wiltz, they made contact with defendant, place[d defendant] in handcuffs and arrest[ed] him."

During cross-examination, the defense played portions of the body camera footage. Our review of the body camera footage reflects that the officers immediately handcuffed defendant upon making contact with him on the porch of a residence. Ofc. Odell read the *Miranda* rights to defendant, asked if he understood his rights, and asked if defendant was in possession of any drugs. Though his responses are not clear on the recording, it appears that defendant acknowledged possession of drugs and indicated to the officers that they were in his front pocket. The officers seized three rock-like substances from defendant's pocket, placing them on the hood of the police vehicle. The officers then informed defendant that he was under arrest for possession of crack cocaine.[1]

Following testimony and arguments, the district court denied defendant's motion to suppress, finding as follows:

> So, based on the testimony that's been provided as well as the exhibits, 1,[2] as well as exhibit 2, in terms of the bodycam, the Court finds that based on the information that the officers had in surveilling that particular area and that particular residence, the Court finds that the State has met its burden of proof to establish probable cause. Although, I would note, that it would be helpful for the Court to have some type of history or foundation as to the surveillance and the narcotics in the crime investigations conducted with respect to that particular house, so that the Court would also have the knowledge, of the historical knowledge, that the officers had at that time of the arrest

---

[1] After being placed in the rear of the police vehicle, the officers checked defendant's name in their mobile data terminal. In its opposition to defendant's writ, the State argues that the name check revealed an outstanding parole violation warrant for defendant. However, the State did not elicit any testimony from Ofc. Vitriano regarding the discovery of an outstanding warrant and the State did not argue to the district court that defendant's outstanding warrant or status as a parolee provided any justification for the search or defendant's arrest.
[2] Exhibit 1 is the preliminary narcotics test on the substances seized from defendant.

and the Court denies any suppression of evidence and out of an abundance of caution any suppression of statements.

Defendant noticed his intent to seek a writ on the district court's ruling, and this timely writ application followed.

**DISCUSSION**

This Court explained the burden of proof and standard of review on a motion to suppress in *State v. Brown*, 16-0965, p. 21 (La. App. 4 Cir. 5/3/17), 219 So.3d 518, 533, as follows:

> When evidence is seized without a warrant, the State has the burden of proof to show that it was lawfully seized. *See* La. C.Cr.P. art. 703(D). In reviewing the correctness of the trial court's pre-trial ruling on a motion to suppress, an appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress and may review the entire record, including testimony at trial.

A search and seizure conducted without a warrant is per se unreasonable, under the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution, unless the warrantless search and seizure can be justified by one of only a few narrowly drawn exceptions to the warrant requirement. *State v. Surtain*, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043. One such exception, advanced by the State at the motion to suppress hearing, arises when the officers conduct an investigatory stop of an individual based upon reasonable suspicion that the person has committed, is committing, or is about to commit an offense. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968); La. C.Cr.P. art. 215.1.

Reasonable suspicion is something less than probable cause needed for an arrest; "it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached." *State v. Lala*, 08-0484, p. 7

(La. App. 4 Cir. 12/3/08), 1 So.3d 606, 610 (quoting *State v. Sneed*, 95-2326, p. 3 (La. App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238).  By contrast, "[p]robable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense." *State v. Parker*, 06-0053, pp. 2-3 (La. 6/16/06), 931 So.2d 353, 355.

Defendant argues that the officers had neither reasonable suspicion to conduct an investigatory stop nor probable cause to arrest him.  Relying on *State v. Saia*, 302 So.2d 869 (La. 1974), defendant argues that an individual's presence at a residence that officers have reason to believe to be a location for narcotics transactions does not establish reasonable suspicion for a warrantless seizure.  In *Saia*, two officers observed the defendant leaving a residence known as an outlet for drugs while on patrol. As the officers pulled up alongside the defendant, she put her hand in her waistband and walked back toward the house. The officers exited their car, pursued the defendant from behind, and as they approached the defendant, saw her pull out two glassine envelopes of what appeared to be heroin. The officers then grabbed the defendant's hand and removed two packets of heroin.  The Court noted that the state had probable cause to arrest when the officers saw the envelopes, but found the defendant was seized when the "police officers sprang from their car and overtook the defendant." *Saia*, 302 So.2d at 873. The Court found that because the officers seized the defendant before they observed the envelopes in the defendant's hand, the stop was invalid and any evidence seized as a result was inadmissible. *Id*; *See also State v. Kinneman*, 337 So.2d 441 (La. 1976) (holding that officers' observation of defendant entering residence identified by informant as drug trafficking hub and exiting with two

5

paper bags was not sufficient to establish probable cause for an arrest or search because such actions were "at least as consistent with innocent activity as with guilt.").

Defendant also relies on this Court's decision in *State v. Sneed*, 95-2326 (La. App. 4 Cir. 9/11/96), 680 So.2d 1237, reversing the district court's denial of defendant's motion to suppress. In *Sneed*, police established surveillance of a residence suspected of being used as a distribution outlet for heroin and observed the defendant arrive by car, enter the house, and leave less than a minute a later. The officers subsequently stopped the defendant and recovered narcotics. In reviewing the totality of the facts and circumstances, this Court noted that "[n]othing indicates that Mr. Sneed carried anything into or out of the residence" and found that the defendant was "stopped solely because he briefly had visited a residence that was under surveillance for drug activity." *Sneed*, pp. 4-5, 680 So.2d at 1239. Given that the officers had no information connecting the defendant to illegal activities at that house or any additional factors to support a reasonable suspicion of his participation in drug activity, this Court concluded that the stop of the defendant was based upon "mere propinquity to others independently suspected of criminal activity." *Id.* (quoting *State v. Williams*, 95-1971 (La. App. 4 Cir. 11/16/95), 665 So.2d 112, 115).

In finding that the totality of the facts and circumstances failed to establish reasonable suspicion to justify the stop and warrantless seizure, this Court distinguished it from other cases as follows:

> The facts established here are thus distinguishable from those in other cases cited by the State as supporting the officers' actions. In *State v. Finne*, 92-2555 (La. App. 4 Cir. 2/11/94), 632 So.2d 819, several others, including a known narcotics offender, had briefly visited a house under surveillance before that defendant was

6

approached on departing the house. In *State v. Richardson*, 575 So.2d 421 (La. App. 4th Cir.), *writ denied*, 578 So.2d 131 (La. 1991), the defendant was stopped because he matched the description of a person observed conducting drug transactions. In *State v. Harris*, 613 So.2d 807 (La. App. 4th Cir.), *writ denied*, 629 So.2d 388 (La. 1993), the defendant was seen walking into pouring rain to meet with another man in an area known to harbor drug traffickers, and he fled when the police approached.

None of these additional factors supporting a suspicion of participation in drug activity were shown to exist in this case. Although the residence was reasonably suspected as being used for narcotics transactions, Mr. Sneed's brief presence there, without more, was equally consistent with innocent behavior as with criminal conduct.

*Sneed*, 95-2326, pp. 5-6, 680 So.2d at 1239.

Turning to the facts of this case, we also find the officer's observation of defendant entering and exiting a residence that was reasonably suspected as being used for narcotics transactions to be insufficient to support a reasonable suspicion of participation in criminal activity. Ofc. Vitriano testified that he had no previous interaction with defendant; he had no particular information or tip regarding defendant; and Ofc. Wiltz did not communicate that he observed defendant engaged in any narcotics activity or handling any suspected narcotics. Furthermore, the body camera footage reflects that the officers immediately upon making contact with defendant handcuffed and arrested him for suspected narcotics activity based solely on Ofc. Wiltz's observation of defendant entering and exiting the residence at 1619 N. Villere Street. But there were no additional facts or circumstances supporting the officers' suspicion of defendant's participation in illegal activity. Therefore, in light of the applicable law and jurisprudence, we find that defendant's actions were "equally consistent with innocent behavior as with criminal conduct." *Sneed*, 95-2326, p. 6, 680 So.2d at 1239. Consequently, we find there were not sufficient articulable facts to establish

7

reasonable suspicion for an investigatory stop and, moreover, no sufficient probable cause to arrest defendant.

Based upon our review of the totality of the circumstances as presented through the testimony, evidence, and arguments introduced to the district court,[3] we find the district court erred in finding that the State had carried its burden of proof to establish probable cause and in denying defendant's motion to suppress.

## CONCLUSION

For the foregoing reasons, we grant defendant's writ application and reverse the district court's October 2, 2019 ruling. Accordingly, defendant's motion to suppress is hereby granted.

**WRIT GRANTED; JUDGMENT REVERSED**

---

[3] In opposition to defendant's writ, the State argues as an alternative basis for admissibility that the officers' subsequent discovery of an outstanding parole violation arrest warrant for defendant "dissipated any taint by the alleged illegal search." First, we note that the State did not present this argument or any evidence in support of it to the district court. Further, the seizure of illegal narcotics from defendant was clearly derivative of an illegal stop and the officers serendipitous discovery of an outstanding warrant does not forgive the Fourth Amendment violation or justify the admission of evidence seized.